## DAIRY REGION LAND COMPANY v. CHARLES A. PAULSON.[1]

### June 20, 1924.

### No. 23,985.

**Dismissal—conspiracy—agency—ratification of fraud.**

Plaintiff corporation, organized for the purpose of taking over and disposing of cut-over lands at a profit, gave its officers and stockholders the privilege of taking or buying such lands at $4 an acre. Its vice president, McKeon, obtained, under this arrangement, eleven deeds from plaintiff to one Joseph Schnee. Schnee, for each 160 acres conveyed, executed his note to plaintiff for $640 secured by mortgage upon the same, and also gave two notes to McKeon for $1,400, with the understanding that this land was to be used for trading purposes, and what could not be so used was to be returned to plaintiff and his notes to McKeon were not to be paid unless the land could be traded off. Schnee's son, in buying a farm from defendant, by false representations as to the character and value of a quarter section of this land, induced the latter to accept a deed thereof containing a covenant that the grantee should pay plaintiff's mortgage. The profit made upon a resale of defendant's farm was shared equally by the Schnees. In this action upon said covenant defendant counterclaimed and had a verdict. It is *held*:

(1) Plaintiff was not entitled either to a dismissal or judgment non obstante, for the jury could find that defendant had a good defense to plaintiff's cause of action.

(2) The evidence did not justify a finding that plaintiff conspired with others to defraud defendant, nor a finding of the existence of an agency between the wrongdoer and plaintiff, hence the counterclaim was not established.

(3) By merely bringing suit upon a covenant of the grantee in a deed to pay an existing mortgage, the mortgagee does not adopt or ratify any fraud of the grantor so as to become liable therefor in a counterclaim in the action.

Action in the district court for Becker county to recover $640 upon a mortgage note which defendant assumed and agreed to pay.

[1]Reported in 199 N. W. 398.

The answer set up the counterclaim mentioned in the fourth paragraph of the opinion. The case was tried before Roeser, J., who when defendant rested denied plaintiff's motion to dismiss and at the close of the testimony denied plaintiff's motion for a directed verdict and for a dismissal of the action so far as defendant's counterclaim was concerned, and a jury which returned a verdict for $4,149.60 in favor of defendant upon the counterclaim. From an order denying its motion for judgment notwithstanding the verdict and for a new trial in case defendant consented to a reduction of the verdict to $3,600, plaintiff appealed. Reversed.

*Adams & Jones*, for appellant.

*Fred Dennis* and *Robert C. Bell*, for respondent.

HOLT, J.

George Rupley, of Duluth, Minnesota, purchased on contract 32,000 acres of cut-over land in the northerly parts of St. Louis and Beltrami counties for $1.75 per acre, paid $1,000 as earnest money and was to pay the balance in instalments. He lacked means, and solicited the aid of Dr. Cress of Sioux City, Iowa, with whom he had worked previous real estate deals. Dr. Cress and some acquaintances of his came in with some money. One McKeon of Pipestone, Minnesota, also learned of the venture, and was, on his request, taken in. Rupley caused two attorneys and a clerk to organize plaintiff corporation. When the organization was perfected, he proposed to transfer the land contract to the corporation for $20,000 plus his outlay, the whole amount to be credited on stock subscriptions. This was formally accepted. Only 200 shares of stock were issued, at $100 a share. Of this Rupley received 100 for his contract and services, Cress 22½ shares for which he paid nothing and 77½ shares went to parties who paid for them. The latter included the friends of Cress whom he interested and McKeon, who subscribed for 20 shares. Thereupon the dummy officers who organized the corporation, but had no interest therein, stepped out. Rupley became president; Cress secretary; and McKeon vice president. All three were directors. In a practical sense these three men owned and controlled the enterprise as if partners.

Rupley and Cress testified that the plan was to dispose of the lands speedily so as to obtain money to meet the instalments upon the contract, which contained a provision that after $10,000 had been paid the deed should be given, and the balance secured by a purchase money mortgage under which, upon the payment of a named amount, any 480 acres might be released from the mortgage. They also testified to an arrangement under which any officer or stockholder could procure any of the lands for $4 per acre, and that accordingly each officer did his best to dispose of the lands; that Rupley had disposed of about 1,000, Cress some 1,500, and McKeon over 15,000 acres.

McKeon got in touch with one Joseph Schnee and agreed to deliver to him 11 deeds from plaintiff to 1,700 acres of this land, Schnee giving a mortgage upon each quarter section so conveyed to secure his note to plaintiff for $640. He also gave to McKeon his two promissory notes for $500 and $900. Schnee's son Alphonse then found defendant, who had listed his 106 acre farm, near Worthington, Minnesota, for sale at $175 per acre with one William Hays. Alphonse and Hays induced defendant to sell his farm to Alphonse for the price listed, and accept in payment of $3,360 of the purchase price one of the quarter sections deeded to Joseph Schnee by plaintiff, as stated, upon false and fraudulent representations as to the value, character and situation of the land. In the deed of Joseph Schnee conveying this quarter section to defendant was inserted a clause or covenant by which the grantee assumed and agreed to pay the mortgage mentioned to plaintiff, so that the land was accepted in lieu of $4,000.

The defendant paid interest on the mortgage once, and then went to St. Louis county to see the land. Finding the same not at all as represented, he refused to pay the next instalment of interest to plaintiff. Thereupon plaintiff sued defendant upon the assumption covenant mentioned. Defendant answered setting up as a counterclaim the damages sustained by the misrepresentations referred to, and alleging that the land did not exceed $320 in value; that Alphonse and Joseph Schnee were the agents of plaintiff in the transaction with defendant; and that plaintiff, with full

knowledge of the fraud, has ratified and approved of the same, and seeks now to avail itself of the advantages gained by the deal. The reply was a denial. The trial resulted in a verdict on the counterclaim for more than demanded. On the motion, in the alternative, for judgment non obstante or a new trial, the court granted a new trial unless defendant consented to a reduction of the verdict to $3,360. Defendant consented and plaintiff appeals.

Plaintiff assigns as error the refusal to dismiss the case when defendant rested. It was not entitled thereto as a matter of right, for, conceding the counterclaim not established, the proof warranted a finding of such misrepresentations made, inducing the acceptance of the deed containing the covenant sued on, that no recovery could be had thereon. This would entitle defendant to a judgment in his favor on plaintiff's cause of action. For the same reason there was no error in denying plaintiff judgment notwithstanding the verdict.

We come then to the proposition whether the court erred in not granting a new trial on the ground that the evidence does not sustain the verdict. The learned trial court instructed the jury that, if a conspiracy existed between the Schnees, plaintiff and its officers, any misrepresentation by one of the co-conspirators created liability as to all, and also that plaintiff might be held if the misrepresentations were made by its agent. No error is assigned upon the charge, so it is necessary to consider whether there is evidence to support the verdict upon the theory of either conspiracy or agency.

Conspiracy to be actionable must be entered upon for the purpose of doing either an unlawful or wrongful act or of doing a lawful act by unlawful means. To dispose of cut-over lands is lawful business. The plan or attempt to do so at a profit of about two dollars an acre does not permit an inference that the use of unlawful means was needful or contemplated to attain that end. There is no proof that plaintiff was to derive any profit whatever out of what either the Schnees or McKeon made in handling the 1,700 acres, or the 160 thereof which defendant got. The character of the proof required to establish conspiracy is aptly defined in Hulinges

v. Darlington, 57 Pa. Sup. Ct. 535: "A conspiracy must be proven by substantive facts, not by disconnected circumstances, any one of which, or all of which, are more consistent, or just as consistent, with a lawful purpose as with an unlawful undertaking." A mere inspection of the cases cited by respondent shows facts entirely at variance with those herein. They are Wolfgram v. Dill, 37 S. D. 282, 157 N. W. 1059; Hanson v. Kline, 136 Iowa, 101, 113 N. W. 504; O'Connor v. Jefferson, 45 Minn. 162, 47 N. W. 538; Redding v. Wright, 49 Minn. 322, 51 N. W. 1056.

Does the evidence warrant a finding that fraudulent and false representations were made by an agent of plaintiff in the transaction of its business? The answer alleges agency and avers that plaintiff with full knowledge of the fraud ratified what was done, and by this action does now seek to avail itself of the fruits of the transaction. There is perhaps no great difficulty in finding the two Schnees connected. They acted in conjunction, and divided the profits from the resale of defendant's farm. Alphonse paid the $500 note Joseph gave McKeon when the deeds were received from plaintiff. But neither of the Schnees had any direct authority from or communication with plaintiff. The entire arrangement of receiving the 11 deeds from plaintiff was between Joseph Schnee and McKeon. It is true, the latter was an officer, director and stockholder of plaintiff, and the one most active in disposing of the lands—its only business. But such circumstances cannot be held to create McKeon plaintiff's agent or give him authority to employ agents in its behalf, in the face of the undisputed testimony of Rupley and Cress that there was no such authority given. What profit was made over $4 per acre went to McKeon and not to plaintiff; and what profit was derived from the deal between defendant and the Schnees, above the payment of the $500 note to McKeon, did not go to either plaintiff or McKeon, but wholly to the Schnees. So there was no agency conferred on the Schnees by plaintiff accepting the benefit of their misrepresentations, unless bringing this suit upon the assumption covenant may be so regarded, and that we think cannot be done for reasons hereinafter stated. The majority are of the opinion that the circumstances proven do

not justify a finding that either McKeon or the Schnees were the agents of plaintiff. The rule stated in Green v. Waddington, 210 N. Y. 79, and other cases cited by respondent is well-established law, but this evidence does not permit its application to establish defendant's counterclaim.

The writer hereof is not of that opinion. Plaintiff was vitally concerned in disposing of its lands quickly. It was really the joint enterprise of its three officers to do this, and the fact that McKeon disposed of about one-half of the lands, while the result of the efforts of the other two was comparatively insignificant, seems to indicate more extensive authority in McKeon. The deeds to Joseph Schnee came direct from plaintiff, and Joseph testified that the arrangement with McKeon was that he was to try to use the land or deeds in trades; that those he could not so use were to be turned back to plaintiff; that he was not to pay the notes given unless the lands were so traded off, and that payment of the $900 note never has been demanded. It seems not likely that any such arrangement would have been made unless McKeon was in fact an agent of plaintiff, even though Rupley testified that he alone had authority to dispose of the lands and is corroborated by Dr. Cress.

There is no merit in the claim that plaintiff ratifies and adopts the transaction of Alphonse Schnee with defendant by now seeking to avail itself of the part made for its benefit, namely, the covenant sued on. It is so customary with grantors and mortgagors to convey land by a deed containing a covenant under which the grantee assumes and agrees to pay the mortgage that the mortgagee, by suing upon such covenant, should not be held to have ratified, vouched for, or made his own the representations or acts of the grantor or mortgagor in dealing with the grantee. Such a covenant is primarily for the benefit of the grantor or mortgagor, and the only contracting parties are grantor and grantee. Although the mortgagee, to avoid circuity of action, may resort thereto for the payment of the mortgage, it is not made at his request and generally without his knowledge. He is not a party to it. "Ratification means adoption of that which was done for and in the name

of another; hence the contract at its inception must purport to be the contract of the principal." 21 R. C. L. 923. The only detrimental consequence to the mortgagee in suing upon such a covenant may be to encounter good defense to his cause of action. As stated in Gold v. Ogden, 61 Minn. 88, 63 N. W. 266: "All the authorities, however, are agreed that in case of such a contract, to which the mortgagee is not a party, and for which he has paid no part of the consideration, he acquires no greater rights than the covenantee or promisee has, and takes the covenant, if at all, subject to all defenses, legal and equitable, which would have been available against the latter." But he does not, by suing on the covenant, subject himself to a counterclaim based upon the grantor's fraud toward the grantee.

Even were it otherwise, the doctrine of ratification cannot aid defendant, for there is no evidence that plaintiff or its officers had any knowledge of Alphonse Schnee's fraud towards defendant prior to bringing this suit. Defendant does not claim that he ever complained to any one, not even to the Schnees, about being defrauded until the service of the answer herein. And at the opening of the trial, when he tendered his deed reconveying the quarter section to plaintiff, plaintiff offered judgment dismissing its action with prejudice to both parties. Defendant declined the offer and insisted upon the right to assert the counterclaim. So in no view can the bringing of the suit be considered as an adoption or ratification of Alphonse Schnee's transaction with defendant.

Since the evidence does not warrant the conclusion that plaintiff was a party to any conspiracy to defraud defendant by misrepresenting the land in question, nor that the relation of principal and agent existed between plaintiff and the Schnees, the verdict cannot stand. In view of this result it is not necessary to notice the other assignments of error relating to rulings upon the admissibility of testimony.

The order is reversed and a new trial granted.