## EDWARD C. HARDING v. OHIO CASUALTY INSURANCE COMPANY, OF HAMILTON, OHIO, AND OTHERS.[1]

March 10, 1950.

No. 34,974.

328

*Jayne & Chase,* for appellant.
*Carroll & Thorson,* for respondents.

PETERSON, JUSTICE.

Action to recover damages for malicious interference with plaintiff's business. Defendants' demurrers to the amended and supplemental complaint upon the grounds that the facts stated therein were not sufficient to constitute a cause of action were sustained. Plaintiff appeals.

The questions for decision are:

(1) Whether a paid surety acting singly has the right to withdraw as surety from a bond, where it does so with malicious motives;

(2) Whether an agent is liable in tort for an act not constituting a separate tort such as assault, conversion, and the like, where the act is one his principal is privileged to commit personally or by an agent, and the principal has authorized the agent to do the act;

(3) Whether a person, by confederating and combining with members of an existing conspiracy, of which he had no knowledge, to commit a lawful act which consummates and accomplishes a purpose of the conspiracy, is liable as a member thereof;

(4) Whether a combination or combinations of actors to do a certain act is unlawful where there is no unlawful purpose for doing it and where no unlawful means are employed to accomplish its commission; and

(5) Whether a principal, by undertaking the defense of an action against both it and its agent to recover for an alleged tort consisting of an act which the principal was privileged to commit by an agent and which the agent, acting within the scope of his authority, committed is liable upon the grounds of adoption and ratification.

The amended and supplemental complaint is lengthy. It contains not only general allegations, some of which relate to evidentiary matter and conclusions, but also specific allegations as to particular acts committed by the alleged conspirators. In general, it alleges that in 1939 a conspiracy was formed to harm plaintiff and force him out of business as a private investigator; that the conspiracy continued thereafter; and that "later" the defendants "joined" the conspiracy and on August 29, 1945, pursuant to and in furtherance of the purposes of the conspiracy, the defendant The Ohio Casualty Insurance Company of Hamilton, Ohio, by withdrawing as surety on plaintiff's bond as a private detective, caused the revocation of his license as such. In stating the particular facts from which the questions for decision emerge, we shall follow the well-settled rule, concerning which there is no dispute, that specific allegations control those of a general nature.[2]

It is alleged that, when the conspiracy was formed in 1939, plaintiff was a private investigator; that in 1939 he was hired by the county attorney of Crow Wing county to investigate the illegal

[2]See, Wiseman v. N. P. Ry. Co. 214 Minn. 101, 7 N. W. (2d) 672; Gile v. Yellow Cab Corp. 177 Minn. 579, 225 N. W. 911; 1 Pirsig's Dunnell, Minn. Pl. § 103.

possession and operation of slot machines in that county; that as a result of his investigations 75 persons were arrested and charged with illegally possessing and operating slot machines and 374 slot machines were seized; that ever since 1939 there has been a conspiracy, the members of which consisted of "the then Governor" "Harold E. Stassen," "his secretaries," and persons interested in the business of owning and operating slot machines, of which there were 6,700 in operation in the state of Minnesota; that the purpose of the conspiracy was to injure plaintiff and force him out of business as an investigator; and that, in executing the conspiracy, the conspirators committed or caused to be committed numerous unlawful acts against plaintiff such as (a) assault and battery, false arrest, false imprisonment, and prosecution upon baseless charges of extortion, drunkenness, and illegal possession of concealed weapons; (b) attempts to bribe, frighten, harass, and injure him; (c) withholding the granting to him of a private detective's license; and (d) the revocation of his license as a private detective, thereby forcing him out of business as such. All these acts were alleged to have been committed by the original conspirators and not by defendants.

As to the defendants, it is alleged that they "joined" the existing conspiracy formed in 1939; that they "maliciously" confederated and collaborated not only with the original conspirators, but also with each other "to cause plaintiff to lose the private detective's license" issued to him "on August 28, 1945," in furtherance of such conspiracy, but there was no allegation that defendants knew of the existence of the existing conspiracy or that their acts were in furtherance thereof; that under L. 1945, c. 130, a licensed private detective is required to file a bond with a corporate surety thereon; that there is "a long established and ironclad rule" among insurance companies writing such bonds that, if a company withdraws from a bond as surety, no other company will become surety thereon; that defendant The Ohio Casualty Insurance Company is engaged in the business of writing such surety bonds; that the other defendants are its agents, who acted with respect to all matters

alleged within the scope of their authority as such—the allegation being that the defendant Pioneer Insurance Agency, Inc., acted as the "alter ego" of the defendant The Ohio Casualty Insurance Company, and that the defendant R. W. Senn acted as the "alter ego" of both companies; that in July 1945 defendant insurance company became surety on plaintiff's bond as a private detective, which he filed on August 17, 1945; that on August 28, 1945, a license was issued to plaintiff as a private investigator; that defendants "had some secret communication with some of the co-conspirators involved in said conspiracy"; that on August 29, 1945—the day after plaintiff's license had been issued to him—defendant insurance company, through the agency of the other defendants, withdrew as the surety on plaintiff's bond, thereby causing his license to be revoked; that, because of the agreement among corporate sureties not to become surety for any person from whose bond any such surety has withdrawn, plaintiff was unable to obtain another bond to keep his license in effect; and that thereby defendants not only consummated and achieved the purposes of the original conspiracy of 1939, but also adopted, ratified, and acquiesced in all the unlawful acts committed by the other coconspirators prior to defendants' joining such conspiracy.

It is also alleged, as a separate ground of adoption and ratification of the acts of the defendants Pioneer Insurance Agency, Inc., and Senn, that defendant The Ohio Casualty Insurance Company undertook the entire defense of this action and to that end, among other things, provided counsel of its hiring.

While it is perhaps unnecessary to say so, defendants would have the court assume for purposes of decision the truth of the allegations mentioned, but would challenge their legal sufficiency.

Plaintiff contends that the acts of the defendants were illegal and wrongful, for the reasons that they were done *maliciously*—that is, for the sole purpose of doing him harm; that, by joining the then existing conspiracy to injure plaintiff and to force him out of business and by effectuating those purposes by causing the defendant insurance company to withdraw as surety on plaintiff's

bond, defendants not only performed an act in furtherance of the conspiracy, but also adopted and ratified all illegal and wrongful acts which previously had been committed or caused to be committed by the other coconspirators in carrying out the purposes of the conspiracy; and that, by undertaking the defense of this action for the other defendants and providing counsel for such purpose, the defendant insurance company adopted and ratified all the acts alleged to have been committed by them. Defendants contend that, regardless of motive and conspiracy, their acts were lawful, for the reason that they were committed in the exercise of defendant insurance company's unqualified and unconditional right to decline to become, or to continue as, surety upon any bond, including plaintiff's; and that, because their acts were lawful, defendants are not liable as conspirators either upon the theory of having committed an act in furtherance of the purposes of a conspiracy or of having adopted and ratified acts previously committed by its alleged coconspirators.

■ Insofar as the legality of an act done by one acting singly depends upon whether it was committed with a motive to cause harm to another, acts are ordinarily divided into two classes, depending on the nature of the right exercised in the commission thereof. On the one hand, some rights are absolute in nature and may be exercised by a person acting singly without regard to his motive, even where it is malicious in the sense that it is done solely to cause harm to a third person. Of this sort is the right to enter into contractual relations with another or to refuse to do so. Hundley v. Louisville & N. R. Co. 105 Ky. 162, 48 S. W. 429, 63 L. R. A. 289, 88 A. S. R. 298; H. D. Watts Co. v. American Bond & Mtg. Co. Inc. 267 Mass. 541, 166 N. E. 713, 84 A. L. R. 12; McMaster v. Ford Motor Co. 122 S. C. 244, 115 S. E. 244, 29 A. L. R. 230; 30 Am. Jur., Interference, § 39. On the other hand, there are rights which are common and qualified and which, because they are such, may be exercised only where there is justification therefor. The general rule is that justification for the exercise of such rights exists where the actor's motive for doing so is to benefit himself, and that it does not exist where his sole motive is to cause harm to a

third person. Of this sort are such rights as the right to compete for the trade of the public (Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 22 L. R. A. [N. S.] 599, 131 A. S. R. 446, 16 Ann. Cas. 807; Beardsley v. Kilmer, 236 N. Y. 80, 140 N. E. 203, 27 A. L. R. 1411 [mixed motives]) or to use subterranean waters (Stillwater Water Co. v. Farmer, 89 Minn. 58, 93 N. W. 907, 60 L. R. A. 875, 99 A. S. R. 541).

Plaintiff, in effect, concedes that a surety company acting singly has the right to withdraw as surety on a bond, but contends that it has no right to do so where it is actuated to do so by malicious motives to injure the principal named in the bond by doing so. The rule is, however, the same in such cases as in other analogous cases. Accordingly, the rule is that, because the business of insuring involves entering into contractual relations with a prospective insured or refusing to do so (under M. S. A. 60.02, "insurance" is an "agreement" of a kind there defined), an insurer acting singly, in the absence of statute providing otherwise, has the absolute right to refuse to underwrite any risk, regardless of its motives therefor. Olmsted, Inc. v. Maryland Cas. Co. 218 Iowa 997, 253 N. W. 804; Orr v. Home Mut. Ins. Co. 12 La. Ann. 255, 68 Am. D. 770; Neustadt v. Employers' Liability Assur. Corp. Ltd. 303 Mass. 321, 21 N. E. (2d) 538, 123 A. L. R. 134, and Annotation; Hunt v. Simonds, 19 Mo. 583; Tanenbaum v. New York F. Ins. Exch. 33 Misc. 134, 68 N. Y. S. 342; Griffin v. Palatine Ins. Co. (Tex. Com. App.) 235 S. W. 202, reversing Palatine Ins. Co. v. Griffin (Tex. Civ. App.) 202 S. W. 1014, set aside on other grounds, Griffin v. Palatine Ins. Co. (Tex. Com. App.) 238 S. W. 637; 29 Am. Jur., Insurance, § 142. A paid surety, or, as it is sometimes said, one engaged in the surety business for profit, as is defendant insurance company, is engaged in a business in the nature of insurance. Farmers State Bank v. Burns, 212 Minn. 455, 4 N. W. (2d) 330, 5 N. W. (2d) 589. The rule is different where a statute, such as those for compulsory workmen's compensation and automobile public liability insurance, provides for compulsory insurance of a particular risk. See, Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 277 N. W. 221; Neustadt

v. Employers' Liability Assur. Corp. Ltd. *supra;* Employers' Liability Assur. Corp. Ltd. v. Frost, 48 Ariz. 402, 62 P. (2d) 320, 107 A. L. R. 1413, and Annotation. There is no statute imposing on insurance companies the duty of underwriting surety risks. Defendant insurance company's withdrawal as surety from the plaintiff's bond amounted to a refusal to continue the contractual relation it had entered into by executing the bond in the first place. A refusal to continue a contractual relation terminable at will stands upon the same basis as a refusal to enter into one. It may be exercised by a surety company acting singly regardless of its motives, even though they may be to cause harm to the principal named in the bond. See, 30 Am. Jur., Interference, § 39.

■ Because the defendant insurance company had the absolute right to withdraw as surety from plaintiff's bond, the other defendants, as its agents authorized to effect such withdrawal, are not liable for any harm to plaintiff caused thereby. While an agent is liable for his own separate torts, such as assault, slander, libel, conversion, and the like, and the agency relation affords him no immunity from or protection against liability therefor, an agent is not liable for an act, otherwise a tort when committed by him, which his principal is privileged to commit, either personally or by an agent, and which the principal has authorized the agent to commit. Strong v. Colter, 13 Minn. 77 (82); Birmingham Terminal Co. v. Wilson, 249 Ala. 397, 31 So. (2d) 563; Braden v. Haas, Howell & Dodd, 56 Ga. App. 342, 192 S. E. 508; Sagone v. Mackey, 225 N. Y. 594, 122 N. E. 621; Greyhound Corp. v. Commercial Cas. Ins. Co. 259 App. Div. 317, 19 N. Y. S. (2d) 239; Herzog v. Mittleman, 155 Or. 624, 65 P. (2d) 384, 109 A. L. R. 662; 2 Am. Jur., Agency, § 326; 3 C. J. S., Agency, § 220, p. 130; Restatement, Agency, § 345. The reason is, as stated in the Greyhound Corp. case, *supra,* citing the leading case of Said v. Butt [1920] 3 K. B. 497, that in such a case the agent's act is in fact that of the principal—"He is the *alter ego* of his master. His acts are in law the acts of his employer" (259 App. Div. 320, 19 N. Y. S. [2d] 242). Here, the complaint alleges not only that the acts of the defendant insurance company's agents

were authorized, but also that the insurance company and its agents conspired to commit them and that in committing such acts defendant Pioneer Insurance Agency, Inc., acted as the "alter ego" of the insurance company and defendant Senn acted as the "alter ego" of both the Pioneer Insurance Agency, Inc., and the insurance company.

A person who joins an existing conspiracy before its consummation, with knowledge of its existence and purpose, becomes a party to the conspiracy the same as if he had originally conspired, and is liable as such. Silliman v. Dobner, 165 Minn. 87, 205 N. W. 696; Hagen v. United States (9 Cir.) 268 F. 344; Thomas v. United States (8 Cir.) 156 F. 897, 17 L. R. A. (N. S.) 720; United States v. Cassidy (D. C.) 67 F. 698; State v. Dreany, 65 Kan. 292, 69 P. 182.

In People v. Mather, 4 Wend. (N. Y.) 229, 261, 21 Am. D. 122, 148, the court said:

"* * * But it may be said that the case supposed shews a new conspiracy. I concede that it does; but it shews a new conspiracy no more than one would be shewn by proving that the defendant assisted in carrying the conspiracy into execution after it was formed. It may be that the judge only meant to say, that the acts of the defendant, being merely in furtherance of the design of the conspirators, would not make him a party to the conspiracy. They certainly would not, unless he knew of the designs of the conspirators, and intentionally lent his aid to them."

In charging the jury in the famous Babcock conspiracy case (United States v. Babcock, No. 14,487, 24 Fed. Cas. 913, 915), Judge Dillon made what is generally regarded as an apt and precise statement of the rule, as follows:

"* * * Any one who, after a conspiracy is formed, and who knows of its existence, joins therein, becomes as much a party thereto, from that time, as if he had originally conspired."

The authorities generally hold that, where a person joins an existing conspiracy with knowledge of its existence and purpose, a

new conspiracy is not formed, and that the status of the members of the original conspiracy is not altered. Marino v. United States (9 Cir.) 91 F. (2d) 691, 113 A. L. R. 975; Coates v. United States (9 Cir.) 59 F. (2d) 173.

Here, there is no allegation that defendants knew of the existence of the original conspiracy and its purpose. The allegation is that defendants and members of the original conspiracy conspired for the withdrawal of the defendant insurance company as surety on plaintiff's bond as a private detective and to cause the revocation of plaintiff's license as such, but not that defendants knew of the original conspiracy, or that its purpose was to force plaintiff out of such business by causing his license to be revoked or that defendants so acted with an intention to effectuate and consummate the purpose of the original conspiracy, even though the revocation of plaintiff's license had that effect. Hence, defendants are not liable as members of the original conspiracy for acts done within the scope thereof, but rather, if at all, as members of the combination which they formed with members of the original conspiracy.

■ While the defendant insurance company acting singly would not be liable for withdrawing as surety on plaintiff's bond, even if it acted maliciously in so doing, and while defendants are not liable *as parties joining the original conspiracy,* the question remains whether, aside from nonliability upon the grounds mentioned, defendants are liable upon the grounds that defendant insurance company in withdrawing as surety on plaintiff's bond acted not singly, but in combination with the other defendants, and that all defendants acted in combination with members of the original conspiracy. It makes no difference, insofar as defendants' alleged liability is predicated upon such combination, whether the combination be regarded as a continuation of the original conspiracy or as a new combination, composed in part of members of the original conspiracy and in part of defendants, because in such a case defendants would not be liable in any event, for the reason already mentioned—lack of knowledge of the existence of the original conspiracy and its purposes. Coates v. United States (9

Cir.) 59 F. (2d) 173; People v. Mather, 4 Wend. (N. Y.) 229, 21 Am. D. 122, *supra.*

A conspiracy is a combination of persons to accomplish an unlawful purpose or a lawful purpose by unlawful means. Dairy Region Land Co. v. Paulson, 160 Minn. 42, 199 N. W. 398. A combination of persons to accomplish a lawful purpose by lawful means is not only not a conspiracy, but is absolutely lawful. Robinette v. Price, 214 Minn. 521, 8 N. W. (2d) 800; Bohn Mfg. Co. v. Hollis, 54 Minn. 223, 55 N. W. 1119, 21 L. R. A. 337, 40 A. S. R. 319. Liability for damage done by the concerted action of several persons acting as a combination is predicated upon civil wrong done to plaintiff by the defendants, and not upon the conspiracy or combination. Venier v. Forbes, 223 Minn. 69, 25 N. W. (2d) 704; Wolfson v. Northern States Management Co. 210 Minn. 504, 299 N. W. 676; Bohn Mfg. Co. v. Hollis, *supra;* Revert v. Hesse, 184 Cal. 295, 193 P. 943; Miller v. Preston, 174 Md. 302, 199 A. 471; Weiner v. Lowenstein, 314 Mass. 642, 51 N. E. (2d) 241; Cohen v. Nathaniel Fisher & Co. 135 App. Div. 238, 120 N. Y. S. 546; City of Kiel v. Frank Shoe Mfg. Co. 245 Wis. 292, 14 N. W. (2d) 164, 15 A. L. R. 691; 15 C. J. S., Conspiracy, § 21.

In the Bohn Mfg. Co. case, *supra,* we said (54 Minn. 234, 55 N. W. 1121):

"* * * The gist of a private action for the *wrongful act* of many is not the combination or conspiracy, but the damage done or threatened to the plaintiff by the acts of the defendants. If the act be unlawful, the combination of many to commit it may aggravate the injury, but cannot change the character of the act." (Italics supplied.)

Prosser, Torts, § 109, p. 1096, quoting from James v. Evans (3 Cir.) 149 F. 136, 140, states the rule as follows: "The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff." Judge McKenna, when a circuit judge, said in Continental Ins. Co. v. Board of Fire Underwriters (C. C.) 67 F. 310, 322, quoting Lord Justice Bowen in Mogul S. S. Co. Ltd. v. Mc-

Gregor, Gow & Co. 23 Q. B. Div. 598, 616 (affirming 21 Q. B. Div. 544), affirmed [1892] App. Cas. 25:

"It is the damage *wrongfully* done, and not the conspiracy, that is the gist of the action on the case for conspiracy." (Italics supplied.)

As said in 11 Am. Jur., Conspiracy, § 45: "Accurately speaking, there is no such thing as a civil action for conspiracy."

It logically follows that, since in so-called civil conspiracy cases liability is predicated upon the tort committed by the conspirators and not upon the conspiracy, allegations of conspiracy do not change the nature of the cause of action. As said in the Weiner case, *supra* (314 Mass. 646, 51 N. E. [2d] 243):

"* * * The averment of a conspiracy does not ordinarily change the nature of the cause of action nor add to its legal force."

The true office of allegations of conspiracy is to show facts for vicarious liability of defendants for acts committed by others, joinder of joint tortfeasors, and aggravation of damages. Cohen v. Nathaniel Fisher & Co. *supra.* See, Bohn Mfg. Co. v. Hollis, *supra.* Since legal malice, as the term is used in this connection, denotes not merely an intent to do harm, but to do *wrongful* harm (30 Am. Jur., Interference, § 39), allegations of malice add nothing —unless a wrongful act causing damage to plaintiff is alleged. Allegations of conspiracy and malice do not make wrongful what otherwise is not. In Leshay v. Tomashoff, 267 App. Div. 635, 639, 47 N. Y. S. (2d) 538, 542, the court said:

"* * * It is familiar law that a plaintiff may not procure damages from parties who 'conspire' to do what they have a legal right to do."

And, as said in Continental B. & T. Co. v. W. A. R. Realty Corp. 265 App. Div. 729, 734, 40 N. Y. S. (2d) 854, 858, quoting from Rhodes v. Ocean A. & G. Corp. Ltd. 235 App. Div. 340, 341, 257 N. Y. S. 214, 216:

"An action does not lie when two or more persons agree to do a lawful act in a lawful manner and cause damage thereby, even though they may have acted with a malicious motive."

Since the allegations as to conspiracy do not change the nature of the cause of action constituting the gist of plaintiff's alleged cause of action, there can be no recovery unless substantive wrongs are pleaded. The test, as has been pointed out, is whether defendants combined either among themselves (1) to accomplish an unlawful purpose or (2) a lawful purpose by unlawful means.

There was no unlawful purpose. The purpose of the combination, which consisted of defendants and members of the original conspiracy, was withdrawal by defendant insurance company as surety on plaintiff's bond and the revocation of his license as a private detective. The revocation of the license was a consequence of defendant insurance company's withdrawal as such surety. In substance, the act, which was the purpose of the combination, was the defendant insurance company's withdrawal as such surety, and the motive therefor was to cause the revocation of plaintiff's license as a private detective. The motive for the doing of the act was not wrongful, for the reason that defendant insurance company, as has been pointed out, had the absolute right to commit the act, regardless of motive. The combination was one to commit an act which the defendant insurance company had an absolute right to commit, regardless of motive. The rule is that it is not unlawful for one to combine with others to do what he has a legal right to do. Leshay v. Tomashoff and Continental B. & T. Co. v. W. A. R. Realty Corp. *supra*.

The motive for the combination of defendant insurance company with its agents, being the same as the one mentioned in the preceding paragraph, is lawful for the same reasons. A combination between a principal and his agents to do an act which the principal is privileged to do personally or by an agent, and the performance of the act by the agent under such an arrangement, are lawful. Greyhound Corp. v. Commercial Cas. Ins. Co. 259 App. Div. 317, 19

N. Y. S. (2d) 239, *supra*. The cited case reviews the authorities and contains an illuminating discussion of the question. The combination involving only the defendants amounted only to an arrangement by a principal (defendant insurance company) with its agents (the other defendants) to perform for it an act which it had an absolute right to do and to have done by its agents acting for it.

There is no allegation that the combination of insurance companies in refusing to underwrite surety risks declined by the other companies was part of the original conspiracy or that it was unlawful. Insurance companies may combine among themselves for lawful, but not for unlawful, purposes. They may combine to refuse to insure certain risks, but where the combination is for an illegal purpose, as, for example, an unlawful restraint of trade, it is illegal. See, Neustadt v. Employers' Liability Assur. Corp. Ltd. 303 Mass. 321, 21 N. E. (2d) 538, 123 A. L. R. 134, *supra;* McGee v. Collins, 156 La. 291, 100 So. 430, 34 A. L. R. 336 (modifying Orr v. Home Mut. Ins. Co. 12 La. Ann. 255, 68 Am. D. 770) ; 30 Am. Jur., Interference, § 45; 15 C. J. S., Conspiracy, § 16. So, while conceivably agreements among insurance companies to refuse to underwrite certain risks might under certain circumstances be illegal, this case, for lack of an allegation that the agreement in question was illegal, is not such. Presumptively, the combination in question was lawful, and, because the presumption was not overcome by a contrary allegation, it prevails and compels decision that the combination was lawful.

There is no allegation that unlawful means were employed to accomplish the purposes of the combinations mentioned.

Hence, there is no basis for holding the combinations unlawful—either as to their purposes or the means employed to accomplish them.

■ The claim that defendants, by combining with the members of the first conspiracy to cause plaintiff's license as a private detective to be revoked, adopted and ratified the prior unlawful acts of the members of the first conspiracy fails, for the reason, above

stated, that there is no allegation that defendants acted with knowledge of such acts. Likewise, the claim that defendant insurance company, by undertaking the defense of this action, adopted and ratified the acts of its agents fails, because the acts alleged to have been adopted and ratified were, so far as defendants are concerned, lawful. Hence, there was no basis for liability.

Affirmed.