Michael SENART, Henry Wenzler, Diane Wenzler, James Woitas, Jean Woitas, Roger Valade, Mildred Valade, Eva Callender, El Roy S. Callender, Virginia Bachman, Frank Bachman and La-Vonne A. McCarty, Plaintiffs,

v.

MOBAY CHEMICAL CORPORATION, Upjohn Company, E.I. du Pont de Nemours & Company, Dow Chemical Company, Olin Corporation, Rubicon Chemicals, Inc., BASF Wyandotte Corporation, Monsanto Company, GenCorp Inc., Defendants.

and

ALLIED CHEMICAL CORPORATION and Union Carbide Corporation, Defendants and Third Party Plaintiffs,

v.

WHIRLPOOL CORPORATION, Third Party Defendants.

Albert HEDIN and Deloris Hedin, Plaintiffs,

v.

WHIRLPOOL CORPORATION, Mobay Chemical Corporation, Upjohn Company, E.I. du Pont de Nemours & Company, Allied Chemical Corporation, Dow Chemical Company, Olin Corporation, Union Carbide Corporation, Rubicon Chemicals, Inc., BASF Wyandotte Corporation, Monsanto Company, GenCorp Inc., Defendants.

Nos. Civ. 4–84–568, Civ. 4–84–569.

United States District Court, D. Minnesota, Fourth Division.

Nov. 29, 1984.

David G. Martin, Doherty, Rumble & Butler, St. Paul, Minn., for plaintiffs.

Gerald M. Linnihan, Arlen R. Logren, Jardine, Logan & O'Brien, St. Paul, Minn., for Mobay Chemical Corp.

Louis A. Lehr, Jr., Arnstein, Gluck, Lehr, Barron & Milligan, Chicago, Ill., and Mi-

chael R. Cunningham, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for Whirlpool Corp.

William P. Studer, Madge S. Thorsen, W. Joseph Bruckner, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for Upjohn Co. and Dow Chemical Co.

William F. Forsyth, Henson & Efron, Minneapolis, Minn., for E.I. du Pont de Nemours & Co.

Robert T. White, Steven J. Kirsch, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, Minn., for Allied Chemical Corp.

James P. Larkin, Jerome H. Kahnke, Larkin, Hoffman, Daly & Lindgren, Minneapolis, Minn., for Olin Corp.

Richard H. Krochock, Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for Rubicon Chemicals, Inc.

Ronald E. Martell, John M. Harens, Moore, Costello & Hart, St. Paul, Minn., for Union Carbide Corp.

Martin Burke, Mary H. Terzino, Faegre & Benson, Minneapolis, Minn., for BASF Wyandotte Corp.

G. Marc Whitehead, Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn., for Monsanto Co.

Robert T. Stich, Lasley, Gaughan, Stich & Angell, Minneapolis, Minn., for GenCorp Inc.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the motion of virtually all the defendants for judgment on the pleadings on Count V of the complaints in both actions. Four defendants also seek attorneys' fees and costs in both actions. One defendant seeks summary judgment on Counts I–IV of the complaint in both lawsuits. One defendant seeks to dismiss Count IV in both actions. Finally, one defendant seeks summary judgment on Count V in both actions.

## FACTS

Both of these lawsuits are products liability cases which base their federal jurisdiction on diversity of citizenship. The product at issue is toluene diisocyanate (TDI). The Whirlpool Corporation uses TDI in manufacturing foam insulation for chest freezers. The plaintiffs in *Hedin v. Whirlpool Corporation* (CIVIL 4–84–569) are former Whirlpool employees who worked at Whirlpool's Arcade Street plant in St. Paul, Minnesota. The plaintiff in *Senart v. Mobay Chemical Corporation* (CIVIL 4–84–568) is not a former employee of Whirlpool, but his previous job required him to spend time at Whirlpool's St. Paul plant.[1] Plaintiffs allege that their exposure to TDI has caused them severe and debilitating injuries, mainly to their lungs and respiratory tracts.

Aside from Whirlpool,[2] the defendants in these cases are manufacturers of TDI. These defendants include both manufacturers who supplied Whirlpool's St. Paul plant with TDI and manufacturers who did *not* supply Whirlpool's St. Paul plant with TDI.

In each case, the first five counts in the complaints are identical. They are:

 I  Strict Liability

 II  Failure to Warn

 III  Breach of Implied Warranties of Merchantaility and Fitness for Use

 IV  Negligence

 V  Conspiracy/Concert of Action

Counts I–IV are traditional products liability claims, while Count V is more novel.

In order to understand the conspiracy/concert of action cause of action contained in Count V, more background is necessary. In 1972, the North American producers of isocyanate (TDI is an isocyanate product) formed the International Isocyanate Institute (Int.I.I.) Plaintiffs allege on information and belief that all defend-

---

1. Spouses are also plaintiffs in both of these actions. The spouses are suing for lost services, society, companionship, etc.

2. Whirlpool is a third party defendant in *Senart.*

ants are or were members of the Int.I.I.[3] In 1973, the National Institute for Occupational Safety and Health (NIOSH)[4] recommended that the prevailing safety standard for exposure to isocyanates be made more stringent.[5] As a response to the NIOSH proposal, in 1974 the Int.I.I. formed a Subcommittee on Toxicity and Occupational Health (Subcommittee). Most defendants had at least one employee who served on the Subcommittee.

Plaintiffs allege that defendants knew of repeated cases of workers being permanently disabled and even dying from exposure to isocyanate. Plaintiffs also allege that defendants knew of a body of scientific evidence which suggested that workers could suffer harm at exposure levels below the prevailing 0.02 parts per million (ppm) standard. Plaintiffs assert that defendants had a duty to warn of the dangers of TDI exposure. Plaintiffs further allege that defendants were aware that a more stringent exposure standard would harm their businesses. Thus, with intentional, willful, and conscious indifference to the lives of individuals, defendants allegedly conspired to influence OSHA to reject the NIOSH proposal.[6] Plaintiffs allege that defendants made arguments against the NIOSH proposal based on inadequate scientific data. Plaintiffs allege defendants knew that users of isocyanate relied on defendants' information, and that defendants conspired to ensure that these users received uniform information. Defendants also allegedly conspired to promote the belief that expo-

sure to isocyanate at levels under 0.02 ppm would harm only a small number of physically abnormal workers. Finally, plaintiffs allege that defendants conspired to "obfuscate and confuse" scientific findings which supported a more stringent standard. Based on this concert of action theory, plaintiffs seek to hold all TDI manufacturers liable regardless of whether they actually supplied Whirlpool with TDI.

## DISCUSSION

Plaintiffs have agreed to dismiss their traditional products liability claims, Counts I–IV, against any defendant which did not actually supply Whirlpool's St. Paul plant. Accordingly, plaintiffs have entered into stipulations with all non-supplier defendants except BASF Wyandotte Corporation. BASF refuses to enter into a stipulation because BASF seeks a dismissal with prejudice. Further discovery could, however, establish that BASF did supply Whirlpool's St. Paul plant with TDI. Consequently, the Court will, in both actions, dismiss Counts I–IV against BASF, but the dismissal will be without prejudice.

The major issue before the Court concerns Count V of the complaints in both actions. Virtually all defendants[7] have moved to dismiss Count V pursuant to Federal Rule of Civil Procedure 12(c), judgment on the pleadings. Count V involves plaintiffs' conspiracy/concert of action theory.

Conspiracy involves persons combining in order to achieve an unlawful ob-

---

**3.** One defendant, GenCorp, has provided an affidavit stating that GenCorp is not and never was a member of the Int.I.I. No other defendant has denied its membership in Int.I.I.

**4.** NIOSH is part of the Public Health Service, which in turn is part of the U.S. Department of Health and Human Services.

**5.** The Occupational and Safety Health Administration (OSHA) of the U.S. Department of Labor sets the isocyanate exposure standard. When the Int.I.I. was formed, the prevailing OSHA standard was that a worker could not be exposed to an isocyanate concentration of more than 0.02 parts per million parts of air (ppm). NIOSH recommended to OSHA that over an eight hour work day, a worker should not be

exposed to more than 0.005 ppm of isocyanate as a time-weighted average. Also, NIOSH recommended 0.02 ppm as the maximum acceptable concentration standard for any 20 minute period. In sum, NIOSH wanted OSHA to reduce workers' exposure to isocyanate. OSHA did not accept the NIOSH recommendation, and the current standard remains at 0.02 ppm maximum exposure.

**6.** Defendants allegedly acted through organizations such as the Int.I.I.

**7.** Defendants Mobay Chemical Corporation and Whirlpool Corporation did not move to dismiss Count V in either *Senart* or *Hedin*.

jective or to use unlawful means to achieve a lawful objective. *Harding v. Ohio Casualty Insurance Co.*, 230 Minn. 327, 41 N.W.2d 818, 824 (1950). Persons combining to achieve goals which they have a legal right to seek, even if they are maliciously motivated, do not "conspire." *Harding*, 41 N.W.2d at 825. The Court in *Ryan v. Eli Lilly & Co.*, 514 F.Supp. 1004, 1012 (D.S.C.1981) (interpreting North and South Carolina law) stated that it was impossible to conspire to commit negligence or fail to exercise due care. Civil conspiracy, the court continued, had to be based on a criminal act or an intentional tort. *Id., citing* W. Prosser, *Handbook of the Law of Torts*, § 46 at 291–93 (1971).

No case interpreting Minnesota law has explicitly adopted or even defined a concert of action theory. One source who has addressed this topic is Dean Prosser. He defines concert of action as

> [a]ll those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him.

Prosser, *Torts* § 46 at 292 (footnotes omitted). *See also Restatement (Second) of Torts* § 876 (1979).

Although some courts may not use the label "concert of action," the classic example of a concert of action case involves drag racing. *Collins v. Eli Lilly Co.*, 116 Wis.2d 166, 342 N.W.2d 37, 46 (1984), *see also Marcy v. Bjorklund*, 291 Minn. 17, 189 N.W.2d 195 (1971). These cases typically involve an injured bystander suing not only the driver of the car which actually collided with the plaintiff, but also the drivers of the other cars which merely participated in the race. The courts hold even the non-colliding drivers liable because they acted in concert with the colliding driver. *E.g., Marcy*, 189 N.W.2d at 197.

The most recent examples of cases in which the plaintiffs raise the theory of concert of action are products liability lawsuits concerning the drug DES. *E.g., Collins v. Eli Lilly Co.*, 116 Wis.2d 166, 342 N.W.2d 37, 46 (1984); *Ryan v. Eli Lilly & Co.*, 514 F.Supp. 1004, 1012 (D.S.C.1981). These cases typically involve female plaintiffs whose mothers have taken DES while pregnant with the plaintiffs. These plaintiffs normally have strong cases except for one fatal flaw—they cannot establish which manufacturer provided their mother with DES. In order to circumvent their inability to pinpoint the actual supplier, plaintiffs assert a number of novel theories including market-share liability (each defendant should pay a share of the judgment proportionate to its market share of DES production) and concert of action (all the DES producers acted in the same manner). *See generally Collins*, 342 N.W.2d at 42–50. DES plaintiffs have been largely unsuccessful with their concert of action theories. *Morton v. Abbott Laboratories*, 538 F.Supp. 593, 596 (M.D.Fla.1982), but they sometimes prevail on other theories. *E.g., Collins; Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 607 P.2d 924, 163 Cal. Rptr. 132, *cert. denied*, 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980).

In the present action, both plaintiffs and defendants apparently agree that concert of action is a possible basis for recovery as both plaintiffs and defendants cite *Centrone v. C. Schmidt & Sons, Inc.*, 114 Misc.2d 840, 452 N.Y.S.2d 299, 302 (Sup.Ct. 1982) for the proposition that "[t]he concert of action theory is not applicable where the concerted action is not tortious or inherently dangerous." Defendants simply argue, however, that plaintiffs' allegations do not assert an element which is necessary to support a conspiracy or concert of action claim, namely, an underlying crime or tort. The Court agrees.

Defendants did act in concert. Yet, even accepting plaintiffs' allegations as

---

**8.** For purposes of a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c), the Court accepts plaintiffs' allegations as true. *See Na-* *tional Metropolitan Bank v. U.S.*, 323 U.S. 454, 457, 65 S.Ct. 354, 355, 89 L.Ed. 383 (1945); 5 C.

true,[8] defendants' concerted action sought only permissible ends and acted only through permissible means. Defendants have never sought to deny the existence of the Int.I.I., but there is nothing inherently wrong with forming an industry-wide trade association. *Payton v. Abbott Labs,* 512 F.Supp. 1031, 1038 (D.Mass.1981). Defendants also readily admit that they disagreed with and criticized the NIOSH proposal for a more stringent exposure standard. In fact, defendants worked in concert to persuade OSHA to reject the NIOSH proposal. Such actions, however, are clearly permissible as first amendment rights to petition the government include advocating positions before administrative agencies such as OSHA. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972). Defendants, even though they are corporations, also enjoy first amendment rights. *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 784, 98 S.Ct. 1407, 1420, 55 L.Ed.2d 707 (1978).

Defendants also readily admit that their opposition to the NOISH proposal was based on their concern that the new proposal would harm their businesses. Nevertheless, selfish motivations do not lessen one's right to present views to the government. *Eastern Railroads Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 139, 81 S.Ct. 523, 530, 5 L.Ed.2d 464 (1961). In short, plaintiffs assail defendants for taking a particular view in a scientific debate and for trying to retain a regulatory standard which defendants preferred. Not only do these actions not constitute torts, they are protected by the first amendment.

Plaintiffs also allege that defendants had a common plan not to provide adequate warnings about TDI. Defendants Dow and Upjohn, however, acknowledged the NIOSH proposed standard in the manuals that they gave to TDI users. *See* Precautions for the Proper Usage of Polyure-

thanes, Polyisocyanurates, and Related Materials, Upjohn Technical bulletin # 107 ¶ 6.12, at 11 (1973); Safe Handling and Storage of Voranate T–80, Dow bulletin, at 13 (1976).[9] This disclosure is totally inconsistent with allegations of a cover up.

■ Plaintiffs, apparently anticipating that the Court would conclude that Count V did not state a viable cause of action, implore the Court to allow them to amend their complaints. The Court will not, however the bulk of their brief to the argument that the Court should recharacterize defendants' motions as Fed.R.Civ.P. 12(b)(6) motions and then allow plaintiffs to amend their complaint. The Court will not, however, perform this recharacterization nor allow plaintiffs to amend their complaints. The Court need not allow amendments to a complaint where, as in the case here, any efforts to amend would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The Court also notes that in the DES cases, the plaintiffs must assert concert of action (or some other theory) in order to overcome their inability to establish who the actual supplier was. If they don't assert a novel theory, their cases will be dismissed. The plaintiffs in *Hedin* and *Senart,* on the other hand, do know (or will be able to discover) which manufacturers actually supplied Whirlpool. These plaintiffs, unlike the DES plaintiffs, do not face the danger of having their lawsuits completely dismissed. Moreover, the traditional products liability claims (Counts I–IV) provide these plaintiffs with the opportunity to receive full compensation for their alleged injuries. The Court consequently will dismiss Count V from the complaint in each of these cases.

Three types of motions remain before the Court. First, no party will be awarded attorneys' fees or costs at this juncture. Second, Monsanto moved to dismiss Count

Wright & A. Miller, *Federal Practice and Procedure* § 1368, at 691 (1969).

**9.** Consideration of these documents is permissible because the Court can take judicial notice of

facts in ruling on a Fed.R.Civ.P. 12(c) motion. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1367, at 685 (1969).

IV, a traditional products liability claim, in its motions. Count IV will not be dismissed in favor of Monsanto. Finally, GenCorp has, in addition to moving for dismissal of Count V, moved for summary judgment on Count V. In light of the Court's decision to dismiss Count V, this motion is now moot.

Based on the foregoing, **IT IS ORDERED:**

1. In both *Hedin* and *Senart*, as against defendant BASF Wyandotte Corporation, Counts I, II, III, and IV are dismissed without prejudice.

2. Count V of the complaints in both *Hedin* and *Senart* are dismissed with prejudice.

3. The motions of defendants Dow Chemical Company, Upjohn Company, Olin Corporation, E.I. du Pont de Nemours & Company in both *Hedin* and *Senart* for attorneys' fees and costs are denied.

4. Defendant Monsanto Company's motions to dismiss Count IV in both *Hedin* and *Senart* are denied.

5. Defendant GenCorp Inc.'s motions for summary judgment on Count V in both *Hedin* and *Senart* are denied as moot.