**GORDON EMPLOYMENT, INC., and Louise Gordon Stern, Appellants,**

v.

**Linda JEWELL, Karla Steiner, et al., Respondents.**

**No. C4-84-141.**

Court of Appeals of Minnesota.

Oct. 23, 1984.

Richard I. Diamond, Larkin, Hoffman, Daly & Lindgren, Minneapolis, for appellants.

E. Anne McKinsey, Linda Groff, Robins, Zelle, Larson & Kaplan, Minneapolis, for respondents.

Heard, considered, and decided by SEDGWICK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal by plaintiffs/appellants Stern and Gordon from a jury award in favor of defendants/respondents Linda Jewell and Karla Steiner, after trial on complaint of theft of trade secrets and tortious interference with business relations and counterclaim for salary and com-

missions due, breach of Jewell's employment contract, and malicious prosecution.

On appeal, appellants contend the trial court erred by (1) refusing to admit expert testimony on confidentiality of client lists in the temporary employment business; and (2) refusing to instruct the jury on punitive damages until actual damages were established. Respondents contend the court erred in denying their request for costs of litigation, including reasonable attorney's fees. We affirm.

### FACTS

Appellant Louise Stern (Stern) hired respondent Linda Jewell (Jewell) to manage the temporary division of Gordon Employment, Inc. (Gordon) in February 1982. When Jewell was hired, the parties discussed plans for the eventual sale of Gordon to Jewell. Gordon hired respondent Karla Steiner (Steiner) as a dispatcher in September 1982.

Gordon maintained files of temporary employee applications and client firm information. The dispatcher used this information to send temporary employees on jobs. The information was kept in unlocked files in a public reception area, and was not labeled in any way as confidential. Stern and Gordon had no written policy on confidentiality.

In early 1983, the parties again discussed the sale of Gordon to Jewell. Meanwhile, both parties investigated leasing larger office space for Gordon. Stern went to Florida in late March, taking with her an unexecuted lease for office space in the building then occupied by Gordon. The leasing agent called Stern in Florida to find out if she wanted the lease. Stern told the agent she did not want the whole space, and that it was possible that Jewell would buy Gordon. The agent told Stern he would not subdivide the space. Jewell then signed the lease for the entire space in her own name. Stern fired Jewell upon her return. Steiner resigned, and she and Jewell began to do business as Jewell Personnel. This lawsuit resulted. After a three-week trial, the jury awarded Steiner $537.58 in salary,

and Jewell $125 for car expenses. All parties appeal.

### ISSUES

1. Did the trial court err when it excluded expert witness testimony on confidentiality of client information?

2. Did the trial court err by refusing to instruct the jury on punitive damages until actual damages were established?

3. Did the trial court err by denying respondents' request for litigation costs, including reasonable attorney's fees?

### ANALYSIS

1. At trial, Stern and Gordon tried to introduce expert testimony to show their actions were reasonable to protect their client lists, which they contend are trade secrets. The trial court refused to admit this testimony on the basis of relevance.

The admissibility of expert testimony is a matter committed to the sound discretion of the trial judge. The exercise of that discretion will not be disturbed on appeal in the absence of manifest abuse resulting in demonstrable prejudice to the appellant. *E.g., Reinhardt v. Colton*, 337 N.W.2d 88, 92 n. 1 (Minn.1983). Many of the questions counsel for Stern and Gordon asked were addressed to the expert's own experience in the temporary employment industry, not industry practice in general. The trial court properly found this information was irrelevant to the issue of whether Gordon and Stern employed reasonable practices to keep their business files confidential. It was within the court's discretion to reject this line of questioning.

Stern and Gordon also argue the trial court erred in ruling the expert's testimony on confidentiality was inadmissible because it went to the ultimate issue and invaded the province of the jury.

Minnesota Rules of Evidence 704 provides:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ulti-

mate issue to be decided by the trier of fact.

The court did err in rejecting the evidence because it went to the ultimate issue. However, the error was harmless because the court properly rejected this evidence on the basis of relevance.

■ Stern and Gordon could not in any event have presented a successful case of misappropriation of trade secrets. The Minnesota Supreme Court interpreted the Uniform Trade Secrets Act, Minn.Stat. §§ 325C.01–325C.08 (1982), in *Electro-Craft Corp. v. Controlled Motion,* 332 N.W.2d 890 (Minn.1983). The court recited the three elements of trade secret status under the Act: (1) the information must not be generally known nor readily ascertainable; (2) the information must derive independent economic value from secrecy; (3) the plaintiff must make reasonable efforts to maintain secrecy. *Id.* at 899.

In explaining the third element, the court stated that more than an intention to keep the information secret is required. The "employer cannot complain of the employee's use of information if the employer has never treated the information as secret." *Id.* at 901. The *Electro-Craft* court said that trade secret protection depends upon a continuing course of conduct by the employer which creates a confidential relationship. This relationship creates a "reciprocal duty" in the employee to treat the information confidentially. *Id.* at 901.

In *Electro-Craft,* the court observed the plaintiffs had not made sufficient efforts to keep information secret, although they screened handbooks and publications for confidential information and required key employees to sign a confidentiality statement. Here, Stern and Gordon made no effort at all to keep the information confidential. It was kept in an unlocked file. There was no policy on confidentiality. In fact, confidentiality was never discussed between employer and employee. They were not prejudiced by the court's refusal to receive expert testimony.

2. At the conclusion of trial, counsel for Stern and Gordon requested an instruction on the availability of an award of punitive damages under Minn.Stat. § 549.20 (1982). The trial court ruled that it would not give such an instruction until the jury found Stern and Gordon had suffered actual damages. Minn.Stat. § 549.20, subd. 1 (1978) provides:

> Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others.

This statute was enacted in 1978 to limit the frequency and amounts of punitive damages awards. *Minnesota-Iowa Television v. Watonwan T.V. Improvement Association,* 294 N.W.2d 297 (Minn.1980). Prior to the enactment of Section 549.20, the court held in numerous cases that punitive damages may be awarded only where plaintiff is entitled to actual or compensatory damages. *Meixner v. Buecksler,* 216 Minn. 586, 13 N.W.2d 754 (1944). The only exception to this rule relates to a limited class of actions for defamation where damages are assumed and need not be specifically found. *E.g., National Recruiters, Inc. v. Cashman,* 323 N.W.2d 736, 741 (Minn.1982).

■ Stern and Gordon argue that the statute makes no mention of a finding of actual or compensatory damages as a prerequisite to an award of statutory punitive damages. This argument ignores the Minnesota Supreme Court's interpretation of this issue. Stern and Gordon have not met their burden of proving that Jewell and Steiner acted "willfully, wantonly, and maliciously." *Peterson v. Sorlien,* 299 N.W.2d 123, 129 (Minn.1980). The trial court did not err in refusing to give the punitive damage instruction.

3. Jewell and Steiner argue that they are entitled to an award of expenses, including reasonable attorney's fees. They contend the action was brought in bad faith since Stern admitted during her testimony that she made no efforts to maintain the secrecy of the client files.

The Minnesota Supreme Court held that Minn.Stat. § 549.21 (1982) codifies the common law rule that attorney's fees are recoverable where the unsuccessful party has acted in bad faith, vexatiously, or for oppressive reasons. *Minnesota-Iowa Television v. Watonwan T.V. Improvement Association*, 294 N.W.2d 297, 311 (Minn.1980). To justify an award under the statute, the party or attorney must have acted in bad faith as to an issue during litigation. *Id.* The court distinguished between bad faith in the litigation and bad faith in the underlying act which is the basis of the suit. *Id.* Although Stern admitted not making efforts to maintain the secrecy of the files, bringing suit under those conditions is not equivalent to bad faith or oppressive motives under the law. There was no court error in refusing to award attorney's fees.

## DECISION

Affirmed.