**NORDALE, INC., a Minnesota corporation, Plaintiff,**

v.

**SAMSCO, INC., a New Hampshire corporation, and Sam Travis, an individual, Defendant.**

**Civ. No. 4–91–598.**

United States District Court, D. Minnesota, Fourth Division.

Aug. 23, 1993.

Norman P. Friederichs, Joseph R. Kelly, Kinney & Lange, Minneapolis, MN, for plaintiff.

Donald Chance Mark, Jr., Kerrylee M. Evensen, Meagher & Geer, Minneapolis, MN, Norman P. Soloway, Steven J. Grossman, Hayes Soloway Hennessey & Hage, Robert C. Dewhirst, Devine Millimet & Branch, Manchester, NH, for defendant.

DOTY, District Judge.

This matter is before the court on the parties' cross-motions for summary judgment. Based on a review of the file, record and proceedings herein, the court grants in part and denies in part the plaintiff's motion and grants the defendants' motion.

## BACKGROUND

Plaintiff Nordale, Inc. ("Nordale") owns U.S. Patent 4,534,828 ("'828 patent").[1] The '828 patent describes a device ("Nordale Fluid Eliminator") that converts solution containing water and soluble substances into water vapor that is safe to expel into the environment and disposable solid waste.

In 1985, defendant Sam Travis asked Nordale if he could market the Nordale Fluid Eliminator and established defendant Samsco, Inc., ("Samsco") for the sole purpose of distributing the device. In March 1985, the parties entered into a verbal agreement wherein Nordale granted Samsco the exclusive right to market and sell the Nordale Fluid Eliminator.

On November 2, 1986, the parties entered into a written contract memorializing the oral contract. Nordale contends that Samsco pressured it into entering into the written contract. Samsco contends that Nordale voluntarily entered into the written contract. The terms of the written contract provided

---

1. The United States Patent Office issued the '828 patent to Norton and Dale Erickson on August 13, 1985. The Ericksons assigned the patent to Nordale.

Samsco with the exclusive marketing rights to the Nordale Fluid Eliminator for a period of seven years and the right of first option to purchase the manufacturing rights to the Nordale Fluid Eliminator for a period of ten months. After the right of purchase expired, Samsco retained the right to match any third-party offer for the manufacturing rights. In addition, Samsco received the right to serve as the exclusive sales and negotiating agent for the manufacturing rights to the Nordale Fluid Eliminator.

Both parties now contend that the other party breached the contract. Nordale contends that Samsco breached the contract by failing to timely pay for each Nordale Fluid Eliminator it delivered. Samsco contends that Nordale breached the contract by unilaterally modifying the terms of the contract and, eventually, by refusing to fill Samsco's orders.

At the center of the contract dispute are the parties' interpretations of the terms of payment. Nordale contends that the parties contemplated the following course of performance: Samsco receives a purchase order from a customer, submits the order to Nordale, Nordale ships the unit to the customer and bills Samsco for the amount due. Nordale contends that to help Samsco get started, it permitted Samsco to pay for the first few units after the customer paid Samsco. However, after the first few units, Nordale contends that the parties agreed that Samsco would pay for the units within thirty days of receiving a Nordale invoice. Nordale asserts that the arrangement is evidenced by the terms "NET 30" or "30 days net" contained in all of the purchase orders Samsco submitted after its second order.

Nordale contends that Samsco failed to comply with those terms and that it unilaterally modified the terms in an attempt to facilitate timely payment. Nordale added interest charges, asked for partial payment with each purchase order Samsco submitted and eventually asked for total payment before delivery. Nordale contends that it refused to provide Samsco with its product only

after Samsco failed to comply with the modified terms.

Samsco disputes Nordale's interpretation. Samsco contends that the term "Net 30" or "30 days net" never appeared on a Nordale invoice and argues that the parties agreed that it would pay for each unit after receiving payment from the customer.

In response to Nordale's refusal to provide it with the Nordale Fluid Eliminator, Samsco filed suit against Nordale in New Hampshire Superior Court on January 31, 1989, for injunctive relief, breach of contract and gross misrepresentation. That litigation is pending.

Prior to the breakdown of the parties' business relationship, Samsco designed its own water evaporator ("SWE"). Nordale contends that Samsco built the SWE with the intent of selling it to Nordale's customers. In addition, Nordale contends that Samsco essentially copied its device and that the SWE infringes its '828 patent.

Nordale filed this action on August 8, 1991, asserting various breach of contract and patent claims. Specifically, Nordale asserts the following:[2]

1. Samsco's manufacture and sale of the SWE literally infringes the '828 patent in violation of 35 U.S.C. § 271(a) (Count I);

2. Samsco's manufacture and sale of the SWE infringes the '828 patent under the doctrine of equivalents in violation of 35 U.S.C. § 271(a) (Count II);

3. Samsco breached the contract by failing to timely pay for the Nordale Fluid Eliminators; (Count III);

4. Samsco breached the contract by submitting orders to Nordale and then filling the orders with the SWE (Count IV);

5. Samsco misappropriated Nordale's trade secrets in violation of the Minnesota Uniform Trade Secret Act, Minn.Stat. § 325C *et seq.* (Count V);

6. Samsco breached the fiduciary duty it owed Nordale by willfully taking business

---

**2.** Nordale seeks an injunction prohibiting Samsco from infringing the '828 patent and an award

of damages for its alleged injuries.

from Nordale for its own benefit (Count VI); and

7. Samsco engaged in unfair competition by disparaging Nordale's product in violation of 15 U.S.C. § 1125(a) (Count VII).

In response, Samsco filed several counterclaims. Specifically, Samsco asserts:[3]

1. It is entitled to a declaratory judgment that the SWE does not infringe the '828 patent (Counterclaim I);

2. Nordale breached the contract by failing to adhere to the terms of the contract, by unilaterally changing the terms of the contract and by refusing to fill Samsco's orders for the Nordale Fluid Eliminator (Counterclaim II);

3. Nordale made negligent or fraudulent misrepresentations concerning the technical specifications, performance capabilities and safety of the Nordale Fluid Eliminator (Counterclaim III);

4. Nordale interfered with Samsco's rights under the contract; (Counterclaim IV);

5. Nordale conspired with its agents and successors to deprive Samsco of its rights under the contract (Counterclaim V); and

6. Nordale's misrepresentations constitute violations of the Minnesota Unlawful Trade Practice's Act, Minn.Stat. § 325D.09 et seq. (Counterclaim VI).

Nordale now moves for summary judgment. Nordale contends that it is entitled to summary judgment on its breach of contract and patent infringement claims. In addition, Nordale contends that it is entitled to summary judgment on each of Samsco's counterclaims.

Samsco cross-moves for summary judgment on two claims. First, Samsco contends that it is entitled to a declaration that the SWE does not infringe the '828 patent. In the alternative, Samsco seeks a declaration that the '828 patent is anticipated, and, therefore, invalid under 35 U.S.C. § 102. Second, Samsco contends that it is entitled to summary judgment on Nordale's trade secret

claim because the alleged trade secret information does not qualify for trade secret status.

Also before the court is Nordale's appeal of United States Magistrate Judge Floyd E. Boline's order dated July 26, 1993, denying its motion to strike two declarations Samsco submitted in support of its noninfringement argument. Nordale asks the court to overrule the magistrate judge's ruling. In the alternative, Nordale asks that the court permit it to respond to the two declarations.

The court will address Nordale's appeal and then consider the parties' arguments in turn.

## DISCUSSION

### 1. Appeal of Magistrate Judge's July 26, 1993, Order

Samsco has submitted the declarations of two patent experts, Donald J. Quigg and Harry F. Manbeck, in support of its noninfringement argument. Shortly before oral arguments on the parties' cross-motions, Nordale moved the court to strike the two declarations from the record. Nordale argues that Samsco untimely disclosed the experts, violating the schedule United States Magistrate Judge Boline set for such disclosure.

The court referred Nordale's motion to strike to the magistrate judge. The magistrate judge determined that Samsco timely disclosed the two experts and denied Nordale's motion to strike. *See Nordale, Inc. v. Samsco, Inc.*, Civil No. 4–91–598 (D.Minn. July 26, 1993) (Docket No. 188). Nordale now contends that the magistrate judge erred and asks that the court reverse the ruling.

Based on its review of the record herein, the court finds that Magistrate Judge Boline's order is neither clearly erroneous nor contrary to law. 28 U.S.C. § 636(b)(1)(A); Rule 72(a) of the Federal Rules of Civil Procedure; D.Minn. Local Rule 72.1(b)(2). Accordingly, the court affirms the order of United States Magistrate Judge Boline dated

---

**3.** Samsco seeks a declaration that the SWE does not infringe the '828 patent and an award of

damages, including punitive damages, for the injuries it has incurred.

July 26, 1993. The court will thus give the declarations of Quigg and Manbeck the weight it determines that each declaration deserves.

In the alternative, Nordale requests permission to respond to the analyses set forth in the declarations. Nordale apparently argues that it submitted no responsive analysis of the declarations because it believed that those declarations were not properly before the court. Nordale thus argues that in the interest of fairness the court should give it an opportunity to respond.

Examining the record, the court finds that Nordale had ample opportunity to respond to the statements set forth in Quigg and Manbeck's declarations. Accordingly, the court rejects Nordale's request and determines that the issues raised in the parties' cross-motions for summary judgment are ripe for decision.

### 2. *The Parties' Cross–Motions for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only

when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a party cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

The court notes that it applies the same summary judgment standard to motions involving patent claims as it does to motions involving other types of claims. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed.Cir.1988) ("It is no longer debatable that the issues in a patent case are subject to summary judgment"); *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1571 (Fed.Cir.1984) ("[T]he statutory purposes of the grant of summary judgment under Fed.R.Civ.P. 56 are without question intended to be effectuated in patent litigation as in any other type of suit and in accordance with the same standard") (footnote omitted). Thus, with this standard at hand, the court considers the parties' cross-motions for summary judgment.

### A. Nordale's Motion for Summary Judgment on its Breach of Contract Claim (Count III)

■ Nordale contends that Samsco breached the contract because Samsco agreed to pay for each Nordale Fluid Eliminator within thirty days of receiving an invoice and failed to comply with those terms. In addition, Nordale contends that Samsco breached the contract by accepting its modifications to the terms of payment and, thereafter, failing to comply with those modifications. Nordale argues that no issues of material fact are in dispute and summary judgment in its favor is warranted.

Samsco counters that no summary judgment on Nordale's contract claim is warranted because material issues of fact are in dispute. Specifically, Samsco contends that there are material issues of fact concerning the original terms of payment and whether it accepted the modifications.

The only issue upon which the parties agree is that the Uniform Commercial Code ("U.C.C.") and the Minnesota statutes codifying the U.C.C. govern their contract dispute. The parties, however, do not agree on the basis for the applying the U.C.C. The court determines that the latter disagreement is of no import and need not be resolved because it independently determines that the U.C.C. and the Minnesota statutes codifying the U.C.C. govern the parties' contractual relationship.

Examining the record, the court finds that the parties' course of dealing raises questions concerning the terms of payment the parties originally contemplated and whether Samsco accepted Nordale's subsequent modifications of the contract. *See e.g., American Mach. & Tool Co. v. Strite-Anderson Mfg. Co.,* 353 N.W.2d 592, 597 (Minn.Ct.App.1984) ("The trend has been for judges, looking beyond written contract terms to reach the "true understanding" of the parties, to extend themselves to reconcile trade usage and course of dealing with seemingly contradictory express terms. They have permitted course of dealing and usage of trade to add terms, cut down or subtract terms, or lend special meaning to contract language."); *see also* Minn.Stat. § 336.2–208(1) ("Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement"). Accordingly, the court concludes that material issues of fact concerning the nature of the original terms of payment and whether Samsco agreed to Nordale's subsequent modifications of the contract are in dispute, precluding summary judgment. The court thus denies Nordale's motion for summary judgment on its breach of contract claim.

### B. Nordale's Motion for Summary Judgment on Samsco's Breach of Contract Counterclaim (Counterclaim II)

Samsco asserts that Nordale breached the contract by (1) failing to offer it the right to match any offer to purchase Nordale's manufacturing rights, (2) failing to allow it to be the exclusive sales and negotiating agent for Nordale's manufacturing rights, (3) failing to accept its orders, and (4) unilaterally modifying the contract terms. Nordale contends that summary judgment in its favor on Samsco's counterclaim is warranted because there is no dispute that it committed none of the alleged breaches.

Examining the record, the court finds disputed material issues of fact that preclude summary judgment. The court previously determined that questions remain concerning Nordale's unilateral modification of the contract and its refusal to fill Samsco's orders. In addition, the court determines that material issues of fact concerning Nordale's alleged breach of the agency provisions of the contract are in dispute. Accordingly, the court denies Nordale's motion for summary judgment on Samsco's breach of contract counterclaim.

### C. Nordale's Motion for Summary Judgment on Samsco's Interference with Contract Counterclaim (Counterclaim IV)

Samsco alleges that Nordale interfered with its rights under the contract by refusing to fill its orders for the Nordale Fluid Eliminator. Nordale contends that summary judgment on that claim is warranted because Samsco breached the contract and it had no duty to continue providing Samsco with the device after the breach.

The court rejects Nordale's argument because it has determined that there are material issues of fact in dispute concerning which party breached the contract. Accordingly, the court denies Nordale's motion for summary judgment on Samsco's interference with contract counterclaim.

**D. Nordale's Motion for Summary Judgment on Samsco's Unlawful Conspiracy Counterclaim (Counterclaim V)**

■ Samsco contends that Nordale conspired with others to interfere with its rights under the contract by entering into negotiations to sell Nordale without using Samsco as its agent. Nordale contends that Samsco's civil conspiracy claim fails as a matter of law because there is no provision in the contract giving Samsco the right to negotiate for Nordale. Nordale requests that the court grant summary judgment in its favor on Samsco's civil conspiracy claim.

"Under Minnesota law, a conspiracy is a combination of persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Bloom v. Hennepin County*, 783 F.Supp. 418, 446 (D.Minn. 1992). "[L]iability is predicated upon the tort committed by the conspirators and not upon the conspiracy, [and, therefore,] allegations of conspiracy do not change the nature of the cause of action." *Harding v. Ohio Casualty Ins. Co.*, 230 Minn. 327, 41 N.W.2d 818, 825 (1950). "Rather, a civil conspiracy claim is merely a vehicle for asserting vicarious or joint and several liability." *Bloom*, 783 F.Supp. at 446 (citation omitted). "The underlying wrongful act must be a criminal act, or an intentional tort." *In re O–Jay Foods, Inc.*, 1991 WL 378164 at *21 (D.Minn. Nov. 21, 1991) (citation omitted) (not reported in Federal Supplement).

Applying that standard to the record before it, the court concludes that summary judgment is warranted on the civil conspiracy claim. Samsco asserts its conspiracy counterclaim only against Nordale. The claim itself creates no new cause of action, *Harding*, 41 N.W.2d at 825, and, based on the facts and posture underlying the complaint and counterclaims, there is no need to assert vicarious or joint and several liability. Accordingly, the court concludes that summary judgment is warranted because the civil conspiracy claim is not viable given the facts and posture underlying this particular motion.[4]

**E. Nordale's Motion for Summary Judgment on Samsco's Misrepresentation Counterclaim (Counterclaim III)**

Samsco alleges that Nordale both negligently and fraudulently misrepresented the technical specifications, performance capabilities and safety of the Nordale Fluid Eliminator. In addition, Samsco alleges that Nordale also negligently and fraudulently misrepresented the nature and duration of its business relationship with Samsco. Nordale argues that Samsco's misrepresentation counterclaim is without merit because it made no misrepresentation concerning the qualities of the Nordale Fluid Eliminator or its intentions regarding the parties' business dealings.

**(1) Negligent Misrepresentation**

■ In *Florenzano v. Olson*, the Minnesota Supreme Court states that Minnesota recognizes the tort of negligent misrepresentation:

> In *Bonhiver* [*v. Graff*, 311 Minn. 111, 248 N.W.2d 291 (1976)], we adopted the Restatement (Second) of Torts definition of negligent misrepresentation:
>
> '(1) One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in

---

**4.** In making this determination, the court notes that Samsco has filed a third-party complaint against Nordale and individual third-party defendants Norton Erickson, Nordale's President, and Dale Erickson, Nordale's Vice–President. That complaint asserts, among other claims, an action for unlawful conspiracy. That complaint, however, is not before the court. The court only considers the conspiracy claim and the factual and procedural predicate of that claim currently before it. The court's ruling on Nordale's motion for summary judgment on Samsco's conspiracy counterclaim is independent from Samsco's third-party plaintiff conspiracy claim. The affect, if any, of the current ruling on the third-party plaintiff conspiracy claim is left for another order.

obtaining or communicating the information.'

387 N.W.2d 168, 174 n. 3 (Minn.1986) (citing *Bonhiver v. Graff,* 311 Minn. 111, 248 N.W.2d 291, 298–99 (1976)). However, "in order to establish a negligent misrepresentation ..., [Samsco] must prove pecuniary loss caused by justifiable reliance on the alleged misrepresentation." *Conwed Corp. v. Employers Reinsurance Corp.,* 816 F.Supp. 1360, 1362 n. 3 (D.Minn.1993) (citing *Hurley v. TCF Banking & Sav., F.A.,* 414 N.W.2d 584, 586 (Minn. Ct.App.1987) (citations omitted)).

Applying that standard to the record before it, the court finds that Samsco's negligent misrepresentation claim is without merit. First, the court finds that Samsco proffers no persuasive evidence that it suffered a pecuniary loss stemming from Nordale's alleged misrepresentations concerning the qualities of the Nordale Fluid Eliminator.[5] Second, Samsco's second basis for its negligent misrepresentation claim, that Nordale misrepresented the nature and duration of the parties' business relationship, is not actionable under a negligent misrepresentation theory. Samsco states that the facts underlying its business relationship claim are "aligned to the breach of contract claim." *See* Samsco Memorandum in Opposition to Nordale's Summary Judgment Motion at 33. "Minnesota law does not recognize an independent tort for conduct that merely constitutes a breach of contract...." *UFE, Inc. v. Methode Elec., Inc.,* 808 F.Supp. 1407, 1410 (D.Minn.1992) (citing *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775, 790 (Minn.), *cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976)). Accordingly, the court determines that Samsco cannot sustain its negligent misrepresentation claim and concludes that summary judgment on that claim in favor of Nordale is appropriate.

### (2) Fraudulent Misrepresentation

To prevail on its fraudulent misrepresentation claim, Samsco must establish:

(1) a representation; (2) the representation must be false; (3) the representation must deal with past or present fact; (4) the fact must be material; (5) the fact must be susceptible of knowledge; (6) the representer must know the fact is false or assert it as of his own knowledge; (7) the representer must intend to have the other person induced to act or justified in acting upon it; (8) the other person must be induced to act or justified in acting; (9) that person's actions must be in reliance upon the representation; (10) that person must suffer damages; and (11) the misrepresentation must be the proximate cause of injury.

*Western Contracting Corp. v. Dow Chem. Co.,* 664 F.2d 1097, 1100–01 (8th Cir.1981) (citation omitted); *see also Florenzano,* 387 N.W.2d at 174 n. 4; *Avery v. Solargizer, Int'l, Inc.,* 427 N.W.2d 675, 681 (Minn.Ct. App.1988) (citations omitted).

Applying that standard to the record before it, the court finds that Samsco's negligent misrepresentation claim is without merit. Samsco proffers no persuasive evidence concerning the fourth, tenth or eleventh elements set forth above. Accordingly, the court finds that Samsco cannot sustain its fraudulent misrepresentation theory and concludes that summary judgment in favor of Nordale on that particular claim is appropriate.

### F. Nordale's Motion for Summary Judgment on Samsco's Unlawful Trade Practices Act Counterclaim (Counterclaim VI)

Samsco alleges that Nordale misrepresented the qualities of the Nordale Fluid Eliminator in violation of the Minnesota Unlawful Trade Practices Act ("MUTPA"), Minn.Stat. § 325D.09 *et seq.* Samsco contends that the facts underlying this claim are similar to those underlying its misrepresentation claim and that disputes concerning material issues of fact preclude summary judgment. Nordale contends that it made no misrepresenta-

---

**5.** The evidence Samsco submits in opposition to Nordale's motion suggests that Samsco was successful in selling the Nordale Fluid Evaporator and that it had many outstanding orders for the device when Nordale refused to sell it more devices. Samsco provides no evidence that it could have sold more units but for Nordale's alleged misrepresentations.

tions in violation of MUTPA and, therefore, summary judgment in its favor is warranted.

Neither party provided an analysis of the legal standard applicable to a claim under MUTPA. The parties' failure, however, does not prevent the court from considering Nordale's motion for summary judgment on Samsco's MUTPA counterclaim.

MUTPA provides, in part, that:

No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality ... of such merchandise.

Minn.Stat. § 325D.13. The court uses an analysis substantially similar to that applicable to a misrepresentation claim brought under the Lanham Act, 15 U.S.C. § 1125,[6] to analyze Samsco's MUTPA counterclaim. *See Alternative Pioneering Sys., Inc. v. Direct Innovative Prod., Inc.*, 822 F.Supp. 1437, 1441 (D.Minn.1993) (citations omitted); *cf. Cincinnati Sub–Zero Prod., Inc. v. Augustine Medical, Inc.*, 800 F.Supp. 1549, 1557 (S.D.Ohio 1992) ("The analysis applicable to the parties' claims under Ohio's Deceptive Trade Practices and False Advertising statutes is the same analysis applicable to their claims under the Lanham Act."); *Energy Four, Inc. v. Dornier Medical Sys., Inc.*, 765 F.Supp. 724, 731 (N.D.Ga.1991) ("The Uniform Deceptive Trade Practices Act involves the same dispositive questions as the Federal Lanham Act.... Thus, the court's analysis under the Lanham Act will dispose of the state law issues.") (citations omitted).

■ Samsco must establish five factors in order to prevail on its counterclaim under MUTPA. *Alternative Pioneering*, 822 F.Supp. at 1441. Those factors are:

(1) Nordale made false statements of fact about its own product;

(2) Those statements actually deceived or have the tendency to deceive a substantial segment of their audience;

(3) Such deception is material because it is likely to influence buying decisions;

(4) Nordale caused its misrepresented goods to enter into interstate commerce; and

(5) Samsco has been or is likely to be injured as the result of the misrepresentations.

*See e.g., ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 964 (D.C.Cir.1990), *aff'd in part and rev'd in part on other grounds*, 997 F.2d 949 (D.C.Cir.1993); *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 244 (9th Cir.1990); *United States Healthcare v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 923–24 (3d Cir.), *cert. denied*, 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990); *Energy Four*, 765 F.Supp. at 730.

Applying that standard to the record before it, the court finds that Samsco's MUTPA counterclaim is without merit. Samsco proffers no persuasive evidence concerning loss stemming from the alleged misrepresentations. The court therefore finds that Samsco cannot sustain its burden with respect to the third and fifth factors of the test set forth above. In addition, the court notes that if it were to analyze the alleged misrepresentations, a step it need not take in this case, it would determine that Nordale made no actionable misrepresentations for purposes of a claim under MUTPA. Accordingly, the court finds that Samsco cannot sustain its MUTPA counterclaim and concludes that summary judgment in favor of Nordale on that particular claim is warranted.

### G. Nordale's Motion for Summary Judgment on Samsco's Request For Punitive Damages

Samsco seeks punitive damages pursuant to Minn.Stat. § 549.20. Samsco alleges that

---

**6.** Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) provides, in part, that:

(a)(1) Any person who, on or in connection with any goods or services, ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which—

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

an award of punitive damages is warranted because Nordale intentionally acted in deliberate disregard of its rights under the contract. Nordale contends that the court should dismiss Samsco's request for punitive damages because Samsco can provide no proof that it willfully violated the law.

Examining the record before it, the court finds that ruling on this issue would be premature because there are material issues of fact in dispute concerning both parties' breach of contract claims. Accordingly, the court denies Nordale's motion for summary judgment on Samsco's request for punitive damages.

### H. Samsco's Motion for Summary Judgment on Nordale's Misappropriation of Trade Secrets Claim (Count V)

Nordale contends that Samsco misappropriated its trade secrets[7] in violation of Minn.Stat. § 325C.01 et seq. Samsco moves for summary judgment on that count, asserting that Nordale cannot demonstrate that the alleged misappropriated items constitute trade secrets as contemplated under § 325C.01 et seq. Specifically, Samsco asserts that Nordale's misappropriation claim fails because the alleged trade secret information is generally known and readily ascertainable by lawful means or, in the alternative, Nordale did not take reasonable efforts to maintain the secrecy of the alleged trade secret information.

The Minnesota Uniform Trade Secrets Act ("MUTSA"), Minn.Stat. §§ 325C.01–325C.08, protects certain types of information through an action for misappropriation. MUTSA defines misappropriation as improper acquisition, disclosure, or use of a "trade secret." Minn.Stat. § 325C.01, subd. 3.[8] The court analyzes three factors to determine whether a particular item constitutes a trade secret.[9] *See e.g., Electro–Craft Corp. v. Controlled Motion, Inc.,* 332 N.W.2d 890, 899–901 (Minn.1983); *Gordon Employment, Inc. v. Jewell,* 356 N.W.2d 738, 741 (Minn.Ct.App.1984) (citation omitted). Those factors are:

(1) The information must not be generally known or readily ascertainable;

(2) The information must derive independent economic value from secrecy; and

(3) The party asserting misappropriation must have made reasonable efforts to maintain the secrecy of the item.

*Electro–Craft,* 332 N.W.2d at 899–901; *Allright Parking of Minnesota, Inc. v. Hoskin,* 1993 WL 173861 at *3 (Minn.Ct.App. May 25, 1993) (unpublished opinion); *Gordon,* 356 N.W.2d at 741. The party asserting misap-

---

7. Nordale contends that Samsco misappropriated several trade secrets, including (1) the identification of Nordale's vendors; (2) Nordale's material specifications; (3) detailed engineering drawings; (4) knowledge of both the problems customers often experience and how to solve those problems; (4) the shape, size and configuration of the Nordale Fluid Eliminator's burner adapter; (5) customer lists; (6) the types of waste fluids a fluid eliminator can process; (7) the optimal operating settings of a fluid eliminator; and (8) knowledge that could cause Nordale financial hardship.

8. MUTSA provides, in part, that:
"Misappropriation" means:
(i) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(ii) disclosure or use of a trade secret of another without express or implied consent by a person who
(A) used improper means to acquire knowledge of the trade secret; or

(B) at the time of disclosure or use, knew or has reason to know that the discloser's or user's knowledge of the trade secret was

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use[.]
Minn.Stat. § 325(C), subd. 3.

9. MUTSA defines trade secret as:
"Trade secret" means information, including a formula, pattern compilation, program, device method, technique, or process, that:
(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other person who can obtain economic value from its disclosure or use, and
(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
Minn.Stat. § 325C.01, subd. 5.

propriation must establish each factor to sustain its claim. *See e.g., Electro–Craft*, 332 N.W.2d at 899–902; *Allright*, 1993 WL 173861 at * 4; *Ring Computer Sys., Inc. v. ParaData Computer Networks, Inc.*, 1990 WL 132615 at * 2 (Minn.Ct.App. Sept. 18, 1990) (unpublished opinion); *Gordon*, 356 N.W.2d at 741.

The court finds that Nordale's misappropriation claim is without merit. Even if Nordale were able to establish the first two factors set forth above, determinations the court need not make in this case, its misappropriation claim fails because it proffers insufficient evidence demonstrating that it maintained reasonable efforts to keep the alleged trade secret information secret. Nordale contends that it limited access to its alleged trade secret information on a need-to-know basis, that its officers and directors generally were the only personnel that had access to the information and that Samsco obtained the information by making demands and using coercive tactics. In addition, Nordale contends that Samsco had a fiduciary duty to not disseminate the trade secret information it received. Nordale argues that those facts demonstrate that "it manifested its intention to maintain the secrecy of its trade secrets." Nordale Memorandum in Opposition to Samsco's Motion for Summary Judgment at p. 16. Nordale thus contends that it has a viable misappropriation claim and summary judgment is not appropriate.

■ Examining the record, the court finds that Nordale submits almost no factual material in support of its arguments. Its bare allegations that it maintained sufficient secrecy, without more, are not enough to withstand Samsco's motion for summary judgment. More than mere intention is required to satisfy the third factor set forth above. *Electro–Craft*, 332 N.W.2d at 901. Nordale must demonstrate that it "manifested that intention by making some effort to keep the information secret," *id.* (citations omitted), and it failed to do so. There is no evidence that Nordale put Samsco on notice regarding the need to keep the information confidential, such as requiring Samsco or its employees to sign a confidentiality agreement or giving oral instructions on the need for confidential-

ity. *See e.g., Electro–Craft*, 332 N.W.2d at 900–02 (insufficient effort to maintain secrecy even though party asserting misappropriation screened handbooks and publication for confidential information and required key employees to sign a confidentiality agreement); *Ring*, 1990 WL 132615 at * 2 ("signing of confidentiality agreement, without more, is not enough") (citation omitted); *Gordon*, 356 N.W.2d at 741 (lack of policy on confidentiality and lack of discussions between the employer and employee concerning confidentiality is evidence that no secrecy was maintained). Nordale's efforts were especially inadequate given the nature of its alleged secrets. The specifications and qualities of its product and its customer lists are not obvious trade secrets. *See e.g., Electro–Craft*, 332 N.W.2d at 902 ("ECC's efforts were especially inadequate because of the nonintuitive nature of ECC's claimed secrets here. The dimensions, etc., of ECC's motors are not trade secrets in as obvious a way as a 'secret formula' might be. ECC should have let its employees know in no uncertain terms that those features were secret."); *Gordon*, 356 N.W.2d at 741 (customer lists are not confidential unless they are locked up or are the subject of a confidentiality agreement). Accordingly, the court finds that Nordale fails to raise a dispute concerning it reasonable efforts to maintain the secrecy of its alleged trade secret information and rejects its assertion that the information at issue constitutes trade secrets under MUTSA.

■ The court also rejects Nordale's argument concerning Samsco's alleged fiduciary duty. In an analogous situation, the *Electro–Craft* court determined that failure to maintain secrecy is fatal to a claim asserting a confidential relationship.

ECC claims that the employee's duty here arose from the employee agreements and from a confidential employer-employee relationship.

However, a common law duty of confidentiality arises out of the employer-employee relationship only as to information which the employer has treated as secret: "[T]he employee is entitled to fair notice of the confidential nature of the relationship and what material is to be kept confiden-

tial." ... Therefore, in the present case, ECC's failure to make reasonable efforts to maintain secrecy, discussed above, was fatal to its claim of a confidential relationship.

*Electro–Craft*, 332 N.W.2d at 903 (citation omitted). The court finds that the Minnesota Supreme Court's reasoning is equally applicable to Nordale and Samsco's business relationship. Accordingly, because there is no evidence suggesting that Nordale adequately maintained the secrecy of its alleged trade secret information, Nordale cannot sustain its fiduciary duty argument. The court thus concludes that summary judgment in favor of Samsco on Nordale's misappropriation of trade secrets claim is appropriate. *See e.g., Electro–Craft*, 332 N.W.2d at 897 ("[W]ithout the finding of a trade secret, ... [the court] cannot grant relief....").

**H. The Parties' Cross–Motions for Summary Judgment on the Nordale's Patent Infringement Claim (Counts I and II and Counterclaim I)**

Nordale contends that the SWE [10] infringes claim 2 of its '828 patent.[11] Samsco admits that the SWE includes a combination of the elements set forth in claim 2, subparts (a) to (d). Samsco contends, however, that the SWE contains no structure falling within the scope of claim 2, subpart (e). Samsco thus argues that there is no infringement. In the alternative, Samsco contends that even if the SWE infringes the '828 patent, the invention described in the '828 patent is anticipated by prior art, rendering the '828 invalid under 35 U.S.C. § 102.

**(1) Literal Infringement**

■ Nordale first contends that the SWE literally infringes its '828 patent.[12] For Nordale to prevail on its claim of literal infringement, it must show that the properly interpreted claims of its patent describe the accused device. *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934–35 (Fed. Cir.1987) (en banc), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). A literal infringement analysis entails two steps. First, the court interprets the patent's claims. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed.Cir.1990) (citation omitted). The court construes the claim "in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device." *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1118 (Fed.Cir. 1985) (emphasis in original); *accord Key Mfg. Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444, 1448 (Fed.Cir.1991). Second, the court compares the accused device to the interpreted claims. *Becton*, 922 F.2d at 796 (citation omitted). Literal infringement requires that every limitation of a patent claim must be found in the alleged infringing product. *Uniroyal, Inc.*, 837 F.2d at 1054 (citation omitted). If one claim limitation is missing, there is no literal infringement as a matter of law. *See e.g., London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed.Cir.1991) (citation omitted).

■ The following figures from the '828 patent depict the Nordale Fluid Eliminator.

---

**10.** There is no dispute that U.S. Patent No. 5.082,525 ("'525·patent"), owned by Samsco, accurately describes the SWE. The court thus considers the specifications set forth in the '525 patent in addition to the other material submitted in its analysis of the parties' contentions.

**11.** Nordale also alleges that the SWE infringes claims 3 and 4 of the '828 patent. Claims 3 and 4, however, are dependent on claim 2 of the '828 patent and the court need only analyze those claims if the SWE infringes claim 2. Because

the court determines that the SWE does not infringe claim 2, the court does not analyze Nordale's assertion of infringement of claims 3 and 4.

**12.** Nordale, the patentee, has the burden of proving infringement. *See, e.g., Smithkline Diagnostics, Inc. v. Helena Lab Corp.*, 859 F.2d 878, 889 (Fed.Cir.1988) (citation omitted); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1054 (Fed. Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).

FIG. 1

FIG. 2

FIG. 5

The '828 patent discloses an apparatus (10) [13] that converts contaminated liquids into harmless vapor and disposable solid waste. The liquid is placed in a tank (11) and heated by hot flue gases that pass from a burner (17) through a flue structure (18) that is immersed in the liquid. The outlet (71) of the flue structure is located above the liquid and adjacent to, but not connected to, a vent (80). In Figure 1, the end (71) of the flue structure projects into vent (80), but the opening (73) to the vent (80) is larger in diameter than the exit (71) from the flue

structure (18). Thus, there is a space between the end (71) of the flue structure and the opening (73) to the vent (80). Figure 5 depicts a slightly different design. The exit end (71) of the flue structure is located below the opening (73) to the vent (80) creating a space between the two parts. Figure 5 also demonstrates that the opening (73) to the vent (80) is larger in diameter that the exit (71) from the flue structure (18).

The spaces shown in both Figure 1 and Figure 5 between the end (71) of the flue structure (18) and the opening (73) to the

13. The numbers contained in the parenthesis correspond to the numbers in the above draw-

ings.

vent (80) are essential to the operation of the Nordale Fluid Eliminator because the vapor rising from the top of the liquid enters the vent (80) through that space. There is no other way for the vapor and fresh air mixture to leave the container. The '828 patent specification highlights this design feature:

Flue gases are emitted with some velocity from end 71 and flow into vent 80 and in doing so aspirate vapor laden air through the space between end 71 and the edge of opening 73.

'828 patent, col. 7, lines 19–22. The flue gases and vapors mixing in the vent (80) are exhausted from the apparatus through a blower assembly (82).

Claim 2, subpart (e) of the '828 patent is directed to the meeting of the flue structure (18) and vent (80). It requires that the passageway defined by the vent structure have a larger diameter than the flue so as to define a space between them whereby the vapor is aspirated into the passageway. Claim 2, subpart (e) describes:

2. An apparatus for converting a contaminated liquid of mostly water into a less contaminating vapor, comprising:

(e) means attached to said container for drawing and exhausting said vapor and air from the inside of said container, said drawing and exhaust means including a vent structure having a generally hollow interior, said vent structure being suitably connected to said container so as to define a passageway from said container to the atmosphere, said second end to said flue means being disposed near said passageway defined by said vent structure, said passageway having a larger diameter than said flue means so as to define a space between said passageway and the second end of said flue means, whereby said vapor and said fresh air are aspirated into said passageway through said space and mixed with the hot gases being emitted from said second end of said flue means toward said passageway, thereby further diluting said vapor.

'828 patent, claim 2, subpart (e), col. 9 lines 8–10, 30–47.

Examining those portions of the record that depict, describe or discuss the SWE, the court finds that the SWE contains no vent structure similar to that described in claim 2, subpart (e) of the '828 patent. The SWE uses separate passageways by which the flue gas and the vapor mixed with fresh air leave the tank. There is no break or space in the flue gas passageway and, therefore, there is no aspiration of the vapor and fresh air mixture as contemplated in the '828 patent. Instead, the flue gas passageway and the vapor and fresh air passageway are separate and empty into a blower that expels the two substances into the atmosphere. Therefore, the court finds that an element of claim 2, subpart (e) of the '828 patent is not present in the SWE and concludes that there is no literal infringement. *See e.g., London,* 946 F.2d at 1538 ("There can be no infringement as a matter of law if a claim limitation is totally missing from the accused device.").

The court's finding of no literal infringement is bolstered by the prosecution history of the '828 patent. The inventor of the device described in the '828 attempted to obtain claims describing a device that did not include the space element described in claim 2, subpart (e). Specifically, the inventor sought the following claims:

9. An apparatus for converting a contaminated fluid of mostly water and water soluble substances into a less contaminated vapor, comprising:

(a) a container for holding said fluid, said container having a bottom and a top and first and second ends;

(b) flue means for conveying heat through said fluid in said container, said flue means being positioned in said container near said bottom so as to be positioned in said fluid, said flue means having first and second ends;

(c) means attached to said container for supplying heat to said flue means, said flue means being interconnected at said first end with said heat supplying means, said heat supplying means causing said flue means to heat said fluid to cause vaporization;

(d) means for mixing said vapor created by the evaporation of said fluid with air,

said mixing means including an aperture in said container, said aperture allowing the flow of air from outside said container into the inside of said container; and

(e) means attached to said container for drawing and exhausting said vapor and air from the inside of said container.

10. An apparatus in accordance with claim 9 wherein said draft and exhaust means includes a blower assembly operatively interconnected with a vent structure having a generally hollow interior, said vent structure being suitably connected to said container so as to define a passageway from said container to the atmosphere, said blower assembly cooperating with said vent structure to create a draft for drawing off said vapor through said vent structure.

11. An apparatus in accordance with claim 10 wherein said second end of said flue means is suitably interconnected with said vent structure for conveying gases from said heat source through said vent structure, whereby said gases are drawn off into the atmosphere.

Mark Aff., Exh. Q (prosecution file of the '828 patent).

The patent examiner rejected those claims as obvious pursuant to 35 U.S.C. § 103. *Id.* Nordale now attempts to expand the scope of its claims to cover the device the patent examiner rejected. Nordale, however, is estopped from so doing. *See e.g., Diversitech Corp. v. Century Steps, Inc.,* 850 F.2d 675, 680–81 (Fed.Cir.1988). Had the inventor of the '828 patent received approval for the rejected claims, the '828 patent might cover the apparatus incorporated in the SWE. However, as those claims were rejected and there being no other persuasive evidence of literal infringement, the court concludes that the SWE does not literally infringe the '828 patent.

**(2) Infringement under the Doctrine of Equivalents**

■ Even if there is no literal infringement, there may still be infringement under the doctrine of equivalents. The court applies that doctrine in cases where an infringer, instead of inventing a new device, merely makes a small change, essentially "stealing" the invention by appropriating "the essence of an invention while barely avoiding the literal language of the claims." *London,* 946 F.2d at 1538 (citations omitted).

■ Under the doctrine of equivalents, the patent holder has the burden of showing that the accused device has elements, steps or limitations that "perform[ ] substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950) (citation omitted). The patent holder must establish each element and demonstrate that every claim limitation is met. *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1389 (Fed.Cir.1992) (citation omitted). Whether a device is equivalent to a claimed invention is a factual inquiry. *Graver Tank,* 339 U.S. at 609, 70 S.Ct. at 856.

■ Applying those principles to the record before it, the court finds that the SWE does not infringe the '828 patent under the doctrine of equivalents. The SWE contains no space comparable to that in the '828 patent wherein vapor and fresh air aspirate into a passageway and mix with hot flue gases. *See* Quigg Decl. p. 10–11; Manbeck Decl. pp. 5–6. Therefore, the court finds that the two devices do not operate in the same manner. *Id.* The court notes that its finding of no infringement under the doctrine of equivalents is bolstered by the United States Patent Office's approval of the '525 patent because "patents are cloaked in a presumption of validity." *Atari Games Corp. v. Nintendo of America, Inc.,* 897 F.2d 1572, 1577 (Fed. Cir.1990). Moreover, the court note that the patent examiner considered the '828 patent in its analysis of the '525 patent application and found no anticipation or obviousness in light of the '828 patent.

Based on the foregoing, the court finds that the SWE neither literally infringes the '828 nor infringes the '828 patent under the doctrine of equivalents. Therefore, the court grants Samsco's motion for a declaratory judgment of no infringement and denies Nordale's motion for summary judgment on

its claim of infringement. Because it finds no infringement, the court determines that there is no need to consider Samsco's contention that the '828 patent is invalid for anticipation under 35 U.S.C. § 102.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The order of United States Magistrate Judge Floyd E. Boline dated July 26, 1993, is affirmed in all respects;

2. Nordale's motion for summary judgment on its breach of contract claim is denied;

3. Nordale's motion for summary judgment on Samsco's breach of contract counterclaim is denied;

4. Nordale's motion for summary judgment on Samsco's interference with contract counterclaim is denied;

5. Nordale's motion for summary judgment on Samsco's unlawful conspiracy counterclaim is granted;

6. Nordale's motion for summary judgment on Samsco's negligent and fraudulent misrepresentation counterclaim is granted;

7. Nordale's motion for summary judgment on Samsco's Minnesota Unlawful Trade Practices Act counterclaim is granted;

8. Nordale's motion for summary judgment on Samsco's request for punitive damages is denied;

9. Samsco's motion for summary judgment on Nordale's misappropriation of trade secrets counterclaim is granted;

10. Nordale's motion for summary judgment on its patent infringement claims is denied; and

11. Samsco's motion for a declaration of noninfringement is granted.